JOHN A. DEVEER *vs.* DELAVAN L. PIERSON & others.
DELAVAN L. PIERSON, trustee, *vs.* JOHN A. DEVEER & another.

Franklin.    September 21, 1915. — October 28, 1915.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Equity Pleading and Practice,* Consolidation of suits, Bill, Waiver of demurrer, Remanding case for new trial. *Executor and Administrator. Equity Jurisdiction,* To reform deed.

A suit in equity to reach and apply property of the principal defendant that cannot be come at to be attached at law in satisfaction of the plaintiff's claim for breach of a covenant of warranty in a deed made by the father of the principal defendant, of whose estate that defendant has been appointed administrator, or the executor of his will, in another State, and a second suit by the principal defendant in the first suit against the plaintiff in that suit, as trustee, seeking to have the deed containing the covenant of warranty reformed or set aside on the ground of mistake, afterwards amended by alleging that the minds of the parties never met and therefore that the covenant of warranty never existed, should not be consolidated into one case in which a single decree can be made, although the cases properly may be tried together.

In a suit in equity brought in the Superior Court the defendant demurred. Without any hearing on the demurrer the case was referred to a master. About a year later the defendant filed a motion that the record be amended by adding to it a statement, that before the reference to the master the defendant "had saved all his rights under the demurrer filed in said cause." The motion was granted by an order set forth in a docket entry. The Superior Court did not act on the demurrer, and the case later came before this court on an appeal from a final decree for the plaintiff. Thereupon this court considered the case upon the demurrer, as to which defendant's rights were "saved" to him, and sustained the demurrer.

A demurrer to a bill in equity seeking to reach and apply equitable assets of the principal defendant in satisfaction of the plaintiff's claim for breach of a cove-

nant of warranty made by the father of the principal defendant, of whose estate such defendant is alleged to have been appointed administrator, or the executor of his will, in another State, must be sustained; because the principal defendant cannot be made liable on the covenant by reason of being the son of the covenantor nor by reason of his appointment as administrator or executor in another State.

Where on an appeal in a suit in equity from a decree based on a master's report, it is apparent from the master's report that the facts on which the rights of the parties depend have not been ascertained, this court in its discretion, although not asked to do so by any of the parties, may remand the case for a new trial of the issues raised by the pleadings, and whether such new trial shall be had before the judge of the trial court or before a master may be left to be determined by the trial court.

In a suit in equity to reform a deed on the ground that the minds of the parties never met as to the land that was to be included in the deed, the determination of this question depends on what the contract was in pursuance of which the deed was to be delivered, and it does not matter what the parties may have supposed the boundaries to be at the time of the delivery of the deed.

Where a suit in equity was remanded for a new trial, because it was plain that on an issue raised by the bill as amended the facts on which the rights of the parties depended had not been ascertained, and on the issues raised by the bill before its amendment it might have been doubtful whether this court would have remanded the case for a new trial on those issues alone, but the facts reported by the master on those issues were not wholly satisfactory, it was ordered that the new trial should cover all the issues in the case raised by the pleadings both before and after the bill was amended.

LORING, J. On September 23, 1911, one John A. DeVeer brought a bill in equity to reach and apply property of the defendant Pierson (which could not be come at to be attached at law) in satisfaction of the plaintiff's claim for breach of a covenant of warranty contained in a deed made by the defendant Pierson's father, who died after the execution of the deed and before the bringing of the bill. It is alleged in the bill that the defendant Pierson "has been appointed administrator of the estate of his father, or executor of his father's will, in some foreign State." To that bill the defendant Pierson filed a demurrer inserted in his answer.

On March 25, 1912 (that is to say six months later), Pierson (the defendant in the above suit) brought a bill in equity against DeVeer in which he alleged that by a decree of the Probate Court, made after the filing of the first bill, the will of his father had been allowed in Massachusetts and by that will all property of the father had been devised to him in trust. It is further alleged in the second bill that the land, which is the basis of the breach of

covenant of warranty relied upon in the first suit, was included in the conveyance made by the father of the plaintiff in the second suit through mistake; that the boundaries of the land to be conveyed by that deed were mutually agreed upon and did not include the land to which Pierson's father had no title and which is the foundation of the breach of covenant of warranty in the first suit stated above. The two cases were referred to a master.

The facts found by the master in the second suit were in substance as follows: In 1894 Dr. Pierson (the father of the plaintiff in the second suit) bought a tract of land of the Northfield Seminary in Northfield "containing eight acres more or less." These eight acres were bounded on the northwest by High Street, the road to Winchester. On that land (and in the southwesterly corner of it) he subsequently built a house which was called the Octagon Cottage. In 1901 Dr. Pierson conveyed to one Benedict more than half of the eight acres bought by him of the Northfield Seminary. In the summer of 1907 DeVeer was in occupation of the Octagon Cottage as a tenant of Dr. Pierson. In a letter dated July 25, 1907, Dr. Pierson's son (the plaintiff in the second suit) asked DeVeer if he would think of buying the cottage. Pursuant to that letter negotiations for selling the cottage were opened between Dr. Pierson and DeVeer. During these negotiations Dr. Pierson went over the "southwestern boundary of the property" with DeVeer. They did not go round the whole lot, Dr. Pierson saying that "the north boundary was not easy to find and he would have to have a survey made." It appeared that with the exception of a small lot of land near the cottage the eight acres were wild woodland. Later on, in a letter dated September 4 of the same year, Dr. Pierson stated the terms on which he would sell the cottage. These terms were accepted by DeVeer. A short time after that "Dr. Pierson took the deed, which had been given him by the Northfield Seminary," as hereinbefore set forth, "to one Smith, and he made out the deed to the defendant here in question, copying the description in the old deed and adding 'Being the premises conveyed to me by Northfield Seminary by deed dated February tenth in the year one thousand, eight hundred and ninety-four, and recorded in Franklin County Registry of Deeds, book 424, page 388.'" The deed was dated October 3, 1907.

"This deed was not then delivered — either because only a small portion of the purchase price had been paid, or because there was to be a survey of the property, or for both reasons." Thereafter the house was occupied during the summer seasons by DeVeer, and payments were made by him from time to time in accordance with the terms stated in the letter of September 4, which had been accepted by DeVeer. "Some time in the summer of 1909, by direction of Dr. Pierson, a stone bound was placed by the road side at the southerly edge of the ravine" hereinafter referred to. Under date of September 1, 1909, Dr. Pierson made a written memorandum of agreement between himself and DeVeer. That memorandum of agreement contained this statement: "On account of some obscurity of survey, it is agreed that new survey be made — and the property front on High St. shall be from stone at south corner to the path entering ravine where the water supply is — leaving the space to the large pine tree that bounds Dr. Lovett's estate in my hands." Dr. Lovett's estate was the land conveyed by Dr. Pierson to Benedict in 1901. The Benedict land was then owned by Dr. Lovett. In April, 1910, Dr. Pierson made another memorandum in writing of the agreement between himself and DeVeer. The memorandum contained this statement: "On account of some obscurity in deed, &c. a new survey is to be made and property frontage to run from stone bound at the S. W. corner northward to path entering ravine where spring is — leaving space to large pine tree bounding Lovett place as my property." The description in each memorandum excluded the Benedict place and a portion of the land owned by Dr. Pierson after deducting from the original lot (conveyed to him by the Northfield Seminary) the land conveyed by him to Benedict. No survey was made. In August, 1910, the deed prepared by Smith as stated above and dated October 3, 1907, was delivered to the defendant [DeVeer] and placed on record.

The conclusion reached by the master was stated in these words: "From the foregoing facts, and from the evidence of oral statements of Dr. Pierson, I find that there was a mistake on his part as to the land conveyed by the deed to the defendant, and that he supposed that what he conveyed to the defendant was bounded on the northeast by a line running from the rear, or south, corner of the Benedict tract to the stone bound last mentioned. I find

further that the defendant was not aware of what was in Dr. Pierson's mind; that he did not know where the division line was between the Benedict tract (then owned by Delavan L. Pierson) and the tract which he was buying, that he supposed he was buying the cottage and eight acres of land as described in the deed to him; that he supposed that those eight acres included the ravine and the spring, but did not know whether his frontage on the street extended to or beyond the big pine tree until his attention was called to the matter by a claim made by Mrs. Laird to said spring which constituted the water supply for his house, whereupon a survey was made, and it was discovered that the North boundary line of the lot described in his deed ran as shown on the plan approximately through the middle of Mrs. Laird's property."

To this report the plaintiff in the second suit made this objection, namely, "That the evidence produced before the master relative to the boundary line between the DeVeer and Laird tracts does not warrant the finding of the master that the defendant DeVeer 'was not aware of what was in Dr. Pierson's mind, that he did not know where the division line was between the Benedict tract and the tract which he was buying.'" Later on he took an exception based upon this objection.

Thereafter the master was directed to "report to the court such portions of the evidence as will enable the parties to argue, and the court to consider, the law questions therein." Pursuant to that order the master reported the testimony of DeVeer, who was called as a witness by the plaintiff. The part of DeVeer's testimony which is now material was his answer to this question, "Did he [Dr. Pierson] ever have it [the land to be conveyed] surveyed, to your knowledge?" His answer was: "No, sir, he didn't, because he had no time, was in Europe, and then he said 'I will give you the original property that I got from the Seminary,' and that ended it."

On the coming in of the master's report the plaintiff was allowed to amend his bill by alleging that the mind of Dr. Pierson and the mind of DeVeer never met and therefore no contract ever came into existence. Thereupon the case was referred back to the master to report on the issues raised by the amended bill. At the hearing before the master on the amended bill the plain-

tiff asked for five "findings and rulings" set forth in the note.* These requests were refused by the master except so far as the findings and rulings were "in accord with this report and the special master's report heretofore filed in this case."

On the issues raised by the amended bill the master made the following finding: "The facts as to the transaction in question, and the knowledge of the respective parties as to the subject matter, are fully set forth in the special master's report filed in this case February 19, 1913, and I see no reason to change the statements made in that report." He also found that Dr. Pierson never knew of the mistake he had made as to the amount of land conveyed by deed to the defendant. It was first known to the plaintiff (his son) in July or August, 1911, some months after Dr. Pierson's death.

In his report in the first suit (*i. e.* the bill to reach and apply brought by DeVeer against Pierson), the master reported that most of the facts were contained in his report as master in the second suit (*i. e.* in the case of Pierson v. DeVeer). In addition he found "that on October 3, 1907, the time when the deed to

---

* The five "findings and rulings" asked for by the plaintiff were as follows:

"1. That John A. DeVeer at the time of the purchase of the Octagon property in 1907, and prior thereto, knew of the sale to Charles E. Benedict of the property to the north and supposed that Benedict's line (the southerly boundary) came to the big pine tree, but he was uncertain just where the southerly boundary was located.

"2. That Arthur T. Pierson went to one Smith, a real estate man, with the deed from the Northfield Seminary; that through inadvertence or mistake of said Smith or said Pierson, Smith drew up a warranty deed covering the entire eight acres described in a deed from the Northfield Seminary to said Pierson, and failed to exclude therefrom so much of said eight acre tract as said Pierson had previously conveyed to Benedict.

"3. That said Pierson, supposing said deed to have been properly drawn and the description properly made out and supposing that it purported to convey only so much of said eight acre tract as he then owned, the north-easterly boundary of which ran from the rear or southerly corner of the Benedict tract to a stone bound at the southerly edge of the ravine, which said line was the southerly boundary of the Benedict tract, executed it, although a survey had been made as agreed.

"4. That the minds of said parties DeVeer and Pierson never met as to the subject matter of the sale.

"5. That the mistake as to the subject matter of the sale was first discovered by said Pierson about August, 1911."

the plaintiff was made, the value of the portion of the land described in said deed to the plaintiff, which he failed to get because it had been previously conveyed away by his grantor, was five hundred dollars."

In his second report in the second suit the master found that a portion of the price for the land conveyed by Pierson to DeVeer was a mortgage for $1,500, on which $500 had been paid. Through a mistake this mortgage was executed by Mrs. DeVeer, although the land was conveyed to Mr. DeVeer. In that connection the master made this statement in his first report in the second suit: "It was agreed that this was a lien on the property and that the amount still unpaid was $1,000 with interest from June, 1911." No objections or exceptions were taken by the defendant to the master's report in the suit brought by DeVeer against Pierson, and no objections or exceptions were taken by the plaintiff to the master's report on the amended bill in the suit brought by Pierson against DeVeer.

In November, 1914, both suits came on for hearing before the court. On December 4, 1914, a "memorandum" for a decree was made * pursuant to which a final decree was entered on June 26, 1915. The final decree is headed by the title of both suits in equity. After reciting that the two cases were tried before the master, that the master had made three reports thereon, that "the same res was the subject of litigation and that there is such identity in the nature of the proceedings, the interests of the parties, and the relief to be afforded, as to require a unification of the proceedings," it was ordered, adjudged and decreed that all the master's reports be confirmed; that all exceptions taken by Pierson be overruled, and "that the requests for rulings presented by said Pierson at the hearing before the court November 23, 1914," be refused; that the above entitled actions are consolidated; that the defendants, John A. DeVeer and his wife, pay to Pierson, the trustee and executor, the sum of $496.05, said sum being the balance due on the mortgage note after making the deductions in the memorandum of findings by this court, and upon said payment that Pierson be ordered to discharge the mortgage to DeVeer and surrender the note to his attorney and

---

* By *Aiken*, C. J.

for costs. The "deductions mentioned in the memorandum of findings by this court" referred to in the decree were $500 (the value of the land which DeVeer failed to get), with interest at the same rate of interest as borne by the note from October 3, 1907, to November 23, 1914.

The record does not show what the rulings were which were presented by Pierson at the hearing before the court on November 23, 1914, and which were referred to in the final decree. From this decree Pierson took two separate appeals, one entitled in each of the two cases.

1. The decree was wrong in ordering the two causes to be consolidated and in entering one decree in a consolidated cause. The two causes were causes which properly might be tried together, but they were not causes which could have been made the subject of one suit. It follows that they could not be consolidated and merged into a single cause. *Lumiansky* v. *Tessier*, 213 Mass. 182. Separate decrees should have been made in each suit. For this reason the decree of June 26, 1915, must be reversed.

2. On March 19, 1912, the defendant Pierson demurred to the bill in the first suit. The first suit was referred to the special master July 30, 1912. On June 7, 1913, the defendant Pierson filed a motion in the first suit "that the record in said case be amended by adding to the same, — 'The defendant before the reference of the report [cause] to the master saved all his rights under the demurrer filed in said cause.'" For cases where the parties have gone to a hearing on the merits without the defendants securing an order saving their rights under a demurrer, see *Torrey* v. *Parker*, 220 Mass. 520; *Attorney General* v. *Onset Bay Grove Association*, 221 Mass. 342.

This motion was allowed by an order set forth in a docket entry, dated December 5, 1913. The demurrer never was acted upon by the court. In spite of that fact the cause was referred to a master, heard by the master, and went to a final decree. Although the defendant's rights under this demurrer were "saved to him," they never were considered in the Superior Court. The demurrer must be sustained.

The bill is a bill in equity brought to reach and apply property of the defendant Pierson which could not be come at to be attached at law in satisfaction of DeVeer's claim for breach of

warranty in a deed given by Pierson's father. In the bill it is alleged that no administrator of the estate of Dr. Pierson, the father, had been appointed in this Commonwealth. In addition there was an allegation that the defendant Pierson had been appointed administrator of the estate of his father, or executor of his father's will, in some foreign State. The defendant Pierson was not liable on the ground that he was the son of Dr. Pierson, or that he had been appointed administrator of the estate of his father, or executor of his will, "in some foreign State." The demurrer must be sustained on that ground, and it is not necessary to consider other grounds set up by the demurrer. This objection to the bill has not been cured by amendment. On March 13, 1913, the plaintiff made a motion "to amend said bill by inserting after the name 'Delavan L. Pierson' the words 'Executor and Trustee under the will of Arthur T. Pierson.'" It does not appear that any action ever was taken on that motion. It may be doubted whether the motion to amend would have cured the objection had the amendment been allowed. The motion to amend does not contain an allegation that Pierson had been made executor under the will of Arthur T. Pierson allowed by a court of probate in this Commonwealth. So far as the first suit is concerned the decree is reversed, the demurrer is sustained, and the suit is to stand for further proceedings.

3. It is apparent that the issues raised by the amendment to the bill in the second suit have not been passed upon by the master. Although no exception was taken to the report of the master on the amended bill and no motion was made to recommit the cause to him because the issues raised by that bill had not been passed upon, we are of opinion that the cause should be recommitted to him or be retried by the court. Where the facts on which the rights of the parties depend have not been ascertained at the trial it is within the power of the court, in its discretion and of its own motion, to recommit the cause for re-trial. *Rubenstein* v. *Lottow,* 220 Mass. 156. We are of opinion that this is such a case. For a similar practice where a case is submitted on agreed facts, see *Old Colony Railroad* v. *Wilder,* 137 Mass. 536, 538; *Phelps* v. *Phelps,* 145 Mass. 416; *Gallagher* v. *Hathaway Manuf. Corp.* 169 Mass. 578.

The master's report on matters covered by the amended bill is

in these words: "The facts as to the transaction in question, and the knowledge of the respective parties as to the subject matter, are fully set forth in the special master's report filed" before the original bill was amended, "and I see no reason to change the statements made in that report." Whether the minds of Dr. Pierson and Mr. DeVeer ever met on the subject matter of the sale depends upon what the contract was pursuant to which the deed dated October 3, 1907, was delivered in August, 1910. In his report the master found that in delivering that deed Dr. Pierson thought that he was delivering a deed covering land "bounded on the northeast by a line running from the rear, or south, corner of the Benedict tract to the stone bound last mentioned," but "that the defendant was not aware of what was in Dr. Pierson's mind;" that he did not know where the division line between the Benedict tract and the tract he was buying was; that he supposed he was buying the cottage and eight acres of land; that he supposed these eight acres included the ravine and the spring, but did not know where the frontage of the lot on the street was. These findings are findings as to what was in the minds of Dr. Pierson and of Mr. DeVeer at the time that the deed dated October 3, 1907, was delivered by Pierson to DeVeer in August, 1910. Whether the minds of Dr. Pierson and Mr. DeVeer ever met upon the subject matter of the sale (*i. e.* upon the land to be conveyed) did not depend upon what was in their minds when the deed was delivered but upon what the contract was pursuant to which the deed was delivered. That question was the subject of the amended bill. Upon that issue the master never has passed.

It perhaps may be doubted whether in our discretion we should have thought that the issues raised by the bill in the second suit before it was amended should have been referred back for a further trial. But as the cause is to be sent back for further trial on the issues raised by the amended bill we are of opinion that there should be a new trial on the issues raised by that bill before it was amended. So far as appears the findings of the master on the issues raised by the bill before it was amended are inconsistent, especially in the light of the evidence reported by him. It appears from the master's report that the negotiations for the sale by Dr. Pierson to DeVeer were begun by the letter written by Dr. Pierson's son (the present defendant in the first suit ) asking DeVeer the ques-

tion whether he would think of buying the cottage. Later Dr. Pierson wrote that the price would be $1,500 and this was agreed to by DeVeer. This was not an offer by Dr. Pierson to sell any land not then belonging to him. It did not include therefore the land which theretofore had been conveyed by Dr. Pierson to Benedict. In addition the two written statements of Dr. Pierson were put in evidence. We assume that these were put in evidence under the statute as to statements of a deceased person. R. L. c. 175, § 66. If they were, these statements were testimony by Dr. Pierson that there was to be a new survey and the "property frontage [was] to run from stone bound at the S. W. corner northward to path entering ravine where spring is — leaving space to large pine tree bounding Lovett place as my property." This meant that not only none of the Benedict tract was to be conveyed to DeVeer, but that a triangular portion of the land left after excluding the Benedict tract was to be kept by Dr. Pierson. DeVeer testified in answer to a question as to whether a survey ever had been made, "No, sir, he didn't because he had no time, was in Europe, and then he said, 'I will give you the original property that I got from the Seminary,' and that ended it." Here is a direct conflict between the testimony of Dr. Pierson and that of DeVeer, and it would seem that the master ought to have adopted one of these two stories. He seems to have tried to adopt both. If the master believed DeVeer's testimony that Dr. Pierson by a subsequent arrangement agreed to convey to DeVeer all the land which came to him from the Seminary (including that previously conveyed to Benedict), we do not see how the master could have found that Dr. Pierson made a mistake as to the land covered by the deed which was dated October 3, 1907, and which was delivered to DeVeer in August, 1910, and "that he supposed that what he conveyed to the defendant was bounded on the northeast by a line running from the rear, or south, corner of the Benedict tract to the stone bound last mentioned." For this not only excluded the Benedict tract but a portion of the land left to Dr. Pierson after he had made the conveyance to Benedict. On the other hand if the master did not believe that by a subsequent agreement all the eight acres which came to Dr. Pierson from the Seminary were to be conveyed to DeVeer in place of the portion of the eight acres originally agreed upon, it

is hard to see how he could fail to find that the original trade or the subsequent written statements made by Dr. Pierson set forth the true agreement, in which case DeVeer knew that the deed delivered in August, 1910, by mistake covered more land than he was entitled to under his contract with Dr. Pierson. The inherent difficulty with the master's first report on the second bill before it was amended is that he did not consider what the contract was pursuant to which the deed dated October 3, 1907, was delivered in August, 1910. In this respect he may have been misled by the way in which DeVeer was examined by Pierson's counsel. DeVeer was examined as to what he supposed he was buying, not as to what was said when the contract of purchase was made.

We are of opinion that the issues raised by the bill before it was amended should stand for retrial as well as those raised by the amended bill. Whether the retrial on this bill should be before the court or before a master is for the Superior Court to determine.

4. The second bill is brought by Pierson as trustee. Whether Pierson as trustee has any interest may be doubted. The only possible interest which Pierson as trustee could have would arise from the fact that a part of the land conveyed to DeVeer would have gone to him as devisee of all Dr. Pierson's land if he is right in his contention as to what land the deed to DeVeer would have covered if the mistake had not been made. Whether that gives him any interest as trustee now need not be considered. Pierson as the executor of his father's will has the main, if not the only, interest in the matters covered by the second bill before it was amended, namely: To have the deed containing the warranty reformed or set aside so as to clear his father's estate from the claim which comes from a breach of warranty which confessedly has taken place if that deed is not reformed or set aside.

In the first suit, *DeVeer* v. *Pierson,* the entry is to be: Decree reversed; demurrer sustained; report of master set aside; the suit to stand for further proceedings in the Superior Court.

In the second suit, *Pierson* v. *DeVeer,* the entry is to be: Decree reversed; the suit to stand for a new trial on the issues raised by the pleadings before and after the bill was amended.

*So ordered.*

The cases were submitted on briefs.

*D. Malone, C. N. Stoddard & G. S. Fuller,* for Delavan L. Pierson individually and as trustee.

*W. A. Davenport,* for John A. and Josephine A. DeVeer.