W. LESLIE BENDSLEV, executor, & others, *vs.* COMMISSIONER
OF PUBLIC SAFETY.

Suffolk.    October 9, 1953. — April 1, 1954.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Public Safety. Motion Pictures. Film. Theatre. Equity Pleading and
Practice,* Rehearing. *Words,* "Combustible."

Motion picture film composed of cellulose acetate is "combustible"
within G. L. (Ter. Ed.) c. 143, § 72. [266]
Where arguments of counsel led this court to believe that there might be
inaccuracies in the report of a master caused by a failure of the parties
to present evidence of facts which might be material and the issues
involved were of public importance, the final decree was reversed and
the suit remanded to the trial court for further hearing. [266-267]

BILL IN EQUITY, filed in the Superior Court on April 18,
1951.

The suit was heard by *Donahue, J.,* upon a master's re-
port.

*Harris A. Reynolds,* Assistant Attorney General, for the
defendant.

*Richard Wait,* for the plaintiffs.

*Walter R. Donovan,* by leave of court, submitted a brief
as amicus curiae.

WILLIAMS, J.    This is a suit in equity by operators of
motion picture theatres located within the Commonwealth
to obtain a declaratory decree as to the validity of certain
regulations promulgated by the commissioner of public safety
concerning the use of film in theatres where motion pictures
are exhibited and of a provision which he has caused to be
inserted in the licenses issued to such theatres.   The original
plaintiffs have been joined by a number of other operators
who have been permitted to intervene.

It is conceded that an actual controversy exists between
the parties as to the validity of these regulations and this
provision.

The authority of the commissioner to issue these regulations is derived from §§ 72 and 73 of G. L. (Ter. Ed.) c. 143, which provide as follows: "Section 72. No cinematograph or similar apparatus involving the use of a combustible film more than ten inches in length, except one using only an enclosed incandescent lamp and cellulose acetate films not more than one and one quarter inches in width, shall, except as provided by sections eighty-five and eighty-six, be kept or used for the purpose of exhibiting such films in or upon the premises of a public building until such cinematograph or similar apparatus has been inspected and approved by an inspector, who shall have placed thereon a numbered metal tag; nor until a booth or enclosure, which has been inspected and approved by such an inspector and his certificate issued therefor, has been provided for said apparatus; nor until such precautions against fire as the commissioner of public safety may specify have been taken by the owner, user or exhibitor . . . . Section 73. The inspectors shall inspect any such apparatus which is to be kept or used as specified in the preceding section, and any booth or enclosure provided therefor, and the commissioner of public safety shall make such rules and regulations as he may deem necessary for the safe use thereof."

The regulations in question are contained in "Rules and Regulations made in accordance with sections 72 to 88, inclusive of chapter 143 of the General Laws" by the commissioner of public safety. Section 2 of said rules and regulations reads, "No person shall keep or use, in or upon the premises of a public building, a cinematograph or similar apparatus involving the use of a combustible or incombustible film more than 10" in length, except in accordance with the provisions of the law and the following rules and regulations." Of these rules and regulations subsection 2 of § 48 reads, "When more than one cinematograph or similar apparatus involving the use of a combustible film more than ten inches in length is used for the continuous exhibition of motion pictures, there shall be two licensed operators in attendance in the booth or enclosure. When only one

licensed operator is in attendance, it will be necessary to 'black-out' during the process of changing over. While exhibiting motion pictures the operator shall devote his entire time and attention to that work, and shall not leave the operating side of the machine while it is in motion."

The provision inserted in the licenses for theatres issued pursuant to G. L. (Ter. Ed.) c. 143, § 34, as amended, reads as follows: "When motion pictures are exhibited, using more than one cinematograph or similar apparatus involving the use of a combustible film more than ten inches in length, there shall be two licensed operators in attendance in the booth or enclosure."

The case was referred to a master by an order which required him to find the facts and report his findings with his "subsidiary findings of fact" together with such questions of law as any party might request. His report was confirmed without objection and a final decree entered by a judge of the Superior Court. This decree in substance provided as follows. (1) It is declared that motion picture film made of cellulose acetate does not constitute "combustible film" as those words are used in G. L. (Ter. Ed.) c. 143. (2) It is declared that § 2 of the rules and regulations providing that "No person shall keep or use, in or upon the premises of a public building, a cinematograph or similar apparatus involving the use of a combustible or incombustible film more than 10" in length, except in accordance with the provisions of the law and the following rules and regulations," is beyond the authority of the commissioner and is invalid, void, and unenforceable in so far as it purports to apply to keeping and using "incombustible film." (3) It is declared that subsection 2 of § 48 of the rules and regulations is invalid, void, and unenforceable. (4) It is declared that the commissioner is without authority to include in any license as a condition to its continued validity the provision above quoted "or any equivalent provision of the same substance." (5) The commissioner and his agents are enjoined from suspending or revoking any license issued to a cinematograph operator under c. 143,

§ 75, for failure to observe subsection 2 of § 48 of the rules and regulations. (6) The commissioner and his agents are enjoined from suspending or revoking any license issued for a theatre under c. 143, § 34, for failure to observe the provision above quoted.

The questions for decision are whether film composed of cellulose acetate is a combustible film, the keeping or use of which the commissioner is authorized to regulate, and if such film is combustible, whether the regulations concerning its use are unreasonable and arbitrary in character and therefore invalid.

The master has reported his subsidiary findings relating to the nature of the film commonly used in motion picture theatres. From his report it appears that the film in ordinary commercial use is about one and three eighths inches in width. Its basic material is cellulose which is treated with either nitric acid or acetic acid. When treated with the former it is called cellulose nitrate, and with the latter, cellulose acetate. Either type of film will burn. Cellulose nitrate contains oxygen, the presence of which tends to accelerate and intensify combustion. It ignites readily and burns rapidly and fiercely. When ignited, it is almost impossible to quench the fire until it burns itself out. In combustion cellulose nitrate is toxic and emits a series of dangerous explosive gases. These gases are readily visible as brown fumes. Cellulose acetate contains no oxygen, does not ignite easily, burns slowly, and its fire is readily extinguishable. Its rate of combustion, tested by a conventional standard, is two hundred ninety-six seconds per cubic inch and is comparable to two hundred seventy-four seconds in the case of viscose rayon fabric and three hundred fifty-two seconds in that of wool fabric. Cellulose nitrate burns approximately sixty-two times as fast as cellulose acetate. Of the film currently in use approximately ninety per cent is cellulose acetate.

The legality of the delegation by the Legislature to the commissioner of public safety of authority to regulate the use of combustible film in theatres open to the public is not

in issue. See *Commonwealth* v. *Maletsky*, 203 Mass. 241, 247. Nor is it seriously contended that film composed of cellulose nitrate is not combustible. The first question for decision is whether by the use of the term "combustible film" in § 72 it was intended to include film composed of cellulose acetate. The master has found that such film is combustible in the sense that it will burn but that it is relatively incombustible when compared to cellulose nitrate film. The first legislative enactment respecting the use of film was St. 1905, c. 176, § 1, the predecessor of § 72. Therein it was provided that "No cinematograph, or other similar apparatus involving the use of a combustible film more than ten inches in length, shall be kept or exhibited on premises licensed for entertainments" until such precautions had been taken as the district police might designate. There is nothing to show that the word combustible was intended to have any restricted meaning and the word seems to have been used in its ordinary sense, that is, capable of burning. See *Needham* v. *Winslow Nurseries, Inc.* 330 Mass. 95, 99. Cellulose acetate film was first specifically mentioned in St. 1914, c. 791, § 13, and St. 1915, c. 169, under the provisions of which film of that type when not more than one inch and one fourth in width in connection with an arc requiring not more than five hundred watts of electric current to operate or an enclosed incandescent lamp could be used in other than public buildings without police inspection or approval. Use in public buildings remained subject to regulation. These statutes evidence no intent to change the meaning of the word combustible but only a recognition that the use of cellulose acetate film under certain conditions involves little danger to the public. Sections 86 and 87 of c. 143, on which the plaintiffs principally rely as evidence of the meaning now to be attached to the word combustible as used in § 72, were inserted in the General Laws by St. 1923, c. 478, § 2. In § 86 it is provided that apparatus adapted to the use of standard width films can be used in schools but "only with cellulose acetate or equally incombustible films marked

in the margin . . . as safe and incombustible . . . and only in connection with an incandescent electric lamp of not more than six hundred watts." In § 87 a penalty is imposed for dealing in or marking "any nitrous or combustible film as cellulose acetate, incombustible or safety film."

We think that these sections do not indicate a purpose to absolve the use of cellulose acetate film from regulation because of incombustibility. They constitute only an acknowledgment that this type of film is less likely to burn than are other types. That no change in the effect of §§ 72 and 73 was contemplated seems clear from the retention in c. 143 of § 83 which restates St. 1914, c. 791, § 13, and provides that "Sections seventy-two to seventy-six, inclusive, shall not apply to any motion picture machine operated with only cellulose acetate films not more than one inch and one fourth in width and requiring not more than five hundred watts of electric current to operate the arc; provided, that such machines shall not be kept or used in a public building except under such regulations as the commissioner of public safety shall prescribe." It follows that the commissioner was authorized to promulgate regulations and impose license provisions dealing with the operation of machines using either cellulose acetate or cellulose nitrate film.

In reference to the second contention of the plaintiffs that the regulations and license provision complained of are arbitrary and unreasonable and therefore invalid, the master has reported facts relating to the construction and operation of cinematographs, and the customary method of their use in motion picture theatres. No objections to his report were filed. Without intimating that the facts as reported are inadequate for a determination of the question of validity, arguments of counsel have led us to believe that there may be inaccuracies in the report caused by a failure of the parties to present evidence of facts which might be material to a correct decision. The issues involved are of public importance and should be decided only after a full and accurate report of all facts which bear upon them. In

order to be sure that justice is done, we feel constrained to recommit the suit for further hearing in the Superior Court by a judge of that court, by the same master, or by another master who may be appointed. *Rubenstein* v. *Lottow,* 220 Mass. 156, 164. *DeVeer* v. *Pierson,* 222 Mass. 167, 175. *Comstock* v. *Soule,* 303 Mass. 153, 159. *Watkins* v. *Simplex Time Recorder Co.* 316 Mass. 217, 224. See *Minot* v. *Minot,* 319 Mass. 253, 258. Such hearing is to be limited to a consideration of evidence relating to the ordinary use and operation of cinematographs in motion picture theatres located within this Commonwealth. The final decree is reversed and the case remanded to the Superior Court for further proceedings in conformity with this opinion.

*So ordered.*