AMERICAN EMPLOYERS' INSURANCE COMPANY *vs.* MAX J. COHEN & another.

Middlesex.    February 10, 1956. — July 11, 1956.

Present: QUA, C.J., RONAN, SPALDING, COUNIHAN, & WHITTEMORE, JJ.

*Fiduciary. Attorney at Law. Equity Pleading and Practice,* Record, Rehearing.

An attorney at law who acted as the attorney for the guardian of a spendthrift and who with the guardian's tacit consent took over the conduct of a business in which the ward was interested, was accountable to the ward as a fiduciary to the extent to which he participated in the administration of the ward's estate, even though technically he converted no specific property. [420]

Certain papers used at the argument before a master but not introduced
    as exhibits and not a part of his report nor designated by the trial
    judge as a part of the record, did not come within Rule 2 (F) of the
    Rules for the Regulation of Practice before the Full Court (1952), 328
    Mass. 694, and could not be considered as evidence by this court,
    although printed in an appendix to one of the briefs. [421]
An interlocutory decree denying a motion to recommit a master's report
    and a final decree dismissing the bill in a suit in equity were reversed
    and the suit was remanded for further hearing by a master or by the
    court where the master's report did not present findings of sufficient
    facts to enable this court to determine the issues involved. [421]

BILL IN EQUITY, filed in the Superior Court on July 24,
1945.

The suit was heard by *Morton, J.*, upon a master's report.

*Philander S. Ratzkoff*, for the plaintiff.

*Max J. Cohen*, (*Ruth H. Craighead* with him,) for the
defendants.

RONAN, J. In this suit in equity by the surety company
which furnished a bond in the penal sum of $50,000 to the
guardian of one Webster, and which also sues as assignee of
the ward, against one Cohen who acted as attorney for the
guardian and one McGuire, the plaintiff appeals from an
interlocutory decree confirming the report of a master and
denying a motion to recommit, and from a final decree
dismissing the bill.

The exceptions to the master's report taken by Cohen,
hereinafter called the defendant, have been waived.

The accounts of Lillian Webster who was appointed
guardian of her husband's estate on October 20, 1931, were
disallowed on September 11, 1944, and she was charged with
a sum in excess of $50,000, the penal sum of her bond, which
sum was paid to the ward by the plaintiff surety company.
Webster also gave the company an assignment of all claims
that he might have against the guardian and the defendant
Cohen. Webster, a spendthrift at the time of the appoint-
ment of a guardian, conducted five drug stores. After the
appointment one store was closed and a new store was
opened in October, 1932, in the name of Webster's Drug
Stores, Inc. This last named store and the four original

stores were merged into a new corporation, Webster Drug Company, and the preferred stock purporting to be worth $20,000 was transferred to the guardian in exchange for the physical assets. The chain of stores was lost by the foreclosure of a chattel mortgage given in 1942.

The daily receipts from the various stores were brought to the defendant's office. The cash was accompanied by the cash register tapes and a list of money paid out. The defendant gave no receipts and it does not appear that any record was kept by the guardian. The defendant contends that the moneys received were used for the benefit of the business. The master reports that in the absence of records it is impossible to determine how much money was received by the defendant and how much of it was applied for the benefit of the business during the period from the commencement of the guardianship on October 20, 1931, to January 23, 1934, the date of organization of the second corporation, the Webster Drug Company, but he found that during said period the defendant received not less than $3,000 a week and that he has failed to account for not less than $7,500. The master does not state any account charging the defendant.

During the first year of her guardianship the guardian swore before the defendant that the account showing receipts from the business amounting to $190,705.71 or weekly cash receipts of $3,667 was true and correct. The account was allowed on April 3, 1933. The decree allowing it was subsequently revoked by the court on September 11, 1944. The master makes no finding as to the expenditures during this accounting period. It is fair to assume that the data for this account together with the others which were allowed and whose allowance was subsequently revoked were furnished by the defendant. These accounts in the aggregate showed assets of more than $50,000 in excess of true and correct accounts. The master does not analyze any of the subsequent accounts regarding payments and expenditures or specifically show what connection, if any, the defendant had in the preparation of these accounts. The decrees

allowing them were revoked by the Probate Court on September 11, 1944. Whether such losses were due to mismanagement or misappropriation by the defendant we do not learn from the report.

The master does not state an account. He stated that the bill alleged a conversion and also alleged that the defendant is liable for money had and received, but he found that the defendant had no personal property in his possession to which the ward had the immediate right to possession, that there was no conversion, and that the dealings between the defendant and the guardian consisted of a series of loans by and reimbursements of the defendant. The master finds that the guardian was never consulted for her decision as to loans or payments to the defendant and that she never questioned the propriety of any loan. The master points out that the plaintiff's right of action is based upon a conversion by the defendant of some specific personalty to which the ward had either actual possession or a right to immediate possession. The master also stated that after examining a written memorandum of approximately three hundred fifty items of money advanced by the defendant from December 23, 1931, to June 4, 1945, and another memorandum of about two hundred fifteen items of money received by the defendant from the Websters beginning February 10, 1932, and ending June 9, 1943, none of the items constituted a conversion and he therefore declined to consider any of these items.

The defendant was an attorney who acted from the beginning as the attorney for the guardian and who with her tacit consent took over the administration of the ward's estate. He was handling trust funds and is to be held accountable as a fiduciary. The record shows a great loss. If technically there was no strict conversion he was at least a participant, *Andrews* v. *Tuttle-Smith Co.* 191 Mass. 461, to the extent of his part in the administration of the estate. It was said in *Otis* v. *Otis*, 167 Mass. 245, 247, "It hardly is worth while to consider whether an amendment of the prayers is technically proper, as undoubtedly it would be

allowed without costs." And proof that an attorney unlawfully withheld money due his client is sufficient to support an action for its recovery without proof of actual conversion. *Cannon* v. *Fahey*, 327 Mass. 245. See *Allen* v. *Moushegian*, 320 Mass. 746.

The two summaries of advances and reimbursements heretofore mentioned seem to have been used at the defendant's argument before the master and were not exhibits in the case. The master did not pass upon the correctness of the items but considered them in determining whether any of the items constituted a conversion and found that there was no conversion and he therefore made no further finding as to conversion. The summaries were not parts of the master's report and, the judge having refused to designate them as parts of the record, they did not come within Rule 2 (F) of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 694.[1] They were not a recital of any part of the evidence and were at most merely an attempt to get into the record a portion of the evidence on a single issue heard by the master. These summaries cannot be made evidence in this manner. See *Leventhal* v. *Jennings*, 311 Mass. 622, 624.

The report of the master does not present findings of sufficient facts to enable us to determine the issues involved. The interlocutory decree denying the motion to recommit and the final decree dismissing the bill must be reversed and the suit must be further heard by a master or by the court. *DeVeer* v. *Pierson*, 222 Mass. 167, 175. *Watkins* v. *Simplex Time Recorder Co.* 316 Mass. 217, 224–225. *Medlinsky* v. *Premium Cut Beef Co.* 317 Mass. 25, 32. *Cavazza* v. *Cavazza*, 317 Mass. 200, 209. *Turgeon* v. *Turgeon*, 326 Mass. 384, 386. *Bendslev* v. *Commissioner of Public Safety*, 331 Mass. 261, 266–267.

*So ordered.*

---

[1] The summaries were printed in an appendix to the defendant's brief. — REPORTER.