GILMAN PRIEST *vs.* ELBRIDGE WHEELER.

No exception lies to a refusal to order a nonsuit.

In an action on a contract of the defendant to buy for a stipulated price, to be paid within a certain time, goods of the plaintiff deposited in the hands of a third person to be delivered to the defendant upon his compliance with the terms of payment, there was evidence that the defendant, after making part payment, and failing to pay the balance within the specified time, and then, subsequently to such failure, making a further payment, told the plaintiff that he might take the goods from the hands of the holder; and that the plaintiff did so, and without notice to the defendant sold them for their full market value at that time, being a sum much less than the balance of the contract price. *Held,* that this evidence would not warrant the judge in directing a verdict for the defendant on the ground that it amounted in law to a rescission of the contract; but that the question whether it was so intended was for the jury.

The resolve of 1865, *c.* 76, did not change the law relating to usury any further than to exempt the contracts therein authorized from the penalties imposed by the General Statutes.

CONTRACT for breach of the following written agreement, dated January 23, 1866, and signed by the defendant: " I hereby agree to purchase of Gilman Priest twenty shares of Wheeler Horseshoe Co. stock with reserved rights, to be paid for in cash April 1, 1866, at par, with ten per cent. interest from date." Trial in the superior court, before *Devens*, J., who allowed a bill of exceptions substantially as follows :

The plaintiff introduced evidence tending to prove that the defendant made the agreement declared on, at its date, in consideration of a promise of the plaintiff, who owned the shares described in the agreement, to sell and transfer them to the defendant on the terms specified, the par value of the shares being $100 each; that, on April 1, 1866, the defendant paid $300 to the plaintiff, when it was mutually agreed that the time for the payment of the balance " should be extended to May 1, 1866, and that in the meanwhile the certificate of said stock, which

the plaintiff then held, should be placed in the hands of Elijah Manson for the use of the defendant, and to be delivered to him by said Manson upon the payment, on or before said May 1, to the plaintiff, or to said Manson for the use of the plaintiff, of the said balance due under the written agreement, and that the defendant should, on or before said May 1, perform said written agreement and pay said balance according to its terms;" that afterwards the defendant made one payment of $100, but never paid more, although he often promised to do so, in reply to repeated demands of the plaintiff; that a few days before December 2, 1867, the defendant told the plaintiff that he might take the certificate of stock from the hands of Manson; and that, on December 2, 1867, the plaintiff did take it from Manson's hands, and sold it to Moses Dockray, at private sale and without notice to the defendant, for $7 per share, which was its full market value at that time.

On this evidence the plaintiff rested his case; and the defendant asked for a nonsuit, which the judge refused to order. The defendant also requested the judge, in submitting the case to the jury, to instruct them " that said contract was wholly void, because an illegal rate of interest was reserved therein." This request also the judge refused, and instructed the jury " that the plaintiff was entitled to recover the price which the defendant had agreed to pay for the stock, less the amount paid by the defendant, and less the amount received from Dockray, with a further deduction of three times the unlawful interest reserved in the contract." The jury found for the plaintiff, and assessed damages in conformity with this instruction; and the defendant alleged exceptions.

*J. E. Maynadier,* for the defendant. The contract was void under *c.* 76 of the Resolves of 1865.* The effect of that resolve

---

* The portion of *c.* 76 of the Resolves of 1865, approved May 17, 1865, relied on by the defendant, was the following : " That, for and during one year next succeeding the passage of this resolve, it shall be lawful for any county, city town, corporation or person, to pay or receive interest, and to contract to pay or receive interest, for any period of time, not exceeding one year, and at a rat not exceeding seven and three tenths per centum per annum."

was to render absolutely void all contracts in which a usurious rate of interest was reserved in violation of it.

*C. G. Keyes,* for the plaintiff, was not called upon.

WELLS, J. No exception lies to the refusal of the court to order a nonsuit to be entered. *Wentworth* v. *Leonard,* 4 Cush. 414.

The evidence that " the defendant told the plaintiff he might take the certificate of stock from the hands of Manson," and that he did so, and sold the stock for " its full market value at that time," would not warrant the court in directing a verdict for the defendant, on the ground that it amounted in law to a rescission or abandonment of the contract. If so intended, it might so operate; but whether it was so intended was a question of fact for the jury.

The Resolve of 1865, *c.* 76, did not change the law relating to usury any further than to exempt the contracts, therein authorized, from the penalties imposed by the General Statutes. The instructions of the court below upon this point were right.

*Exceptions overruled.*