CURTIS G. WATKINS *vs.* SIMPLEX TIME RECORDER CO. &
another.

Worcester.   March 7, 1944. — May 6, 1944.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Equity Pleading and Practice*, Rehearing; Appeal; Master: report of evi-
dence.  *Contract*, Rescission.  *Frauds, Statute of.  Sale*, Contract of
sale, Acceptance, Receipt, Sale of corporate stock, Statute of frauds.
*Words*, "Abandonment," "Surrender."

The mere fact that a defendant in a suit in equity was ordered to pay
costs in the final decree made him a party aggrieved and entitled him
to appeal from the decree.

In connection with an exception to a master's report arising from an
objection not accompanied by a request for a summary of evidence
under Rule 90 of the Superior Court (1932) and based on the ground
that a conclusion by the master was erroneous on the subsidiary find-
ings, this court could not consider such a summary appended to the
report and stated by the master to have been requested by all parties
"to determine questions of law raised by objections."

Because subsidiary findings in a master's report were insufficient to per-
mit a determination of what was apparently the principal issue, and
the trial judge with technical propriety had sustained an exception to
the only conclusion of the master having any bearing on that issue,
this court reversed a decree confirming the report and the final decree,
and ordered the report set aside and the suit remanded for rehearing
in the trial court either by a judge or by a master as that court should
determine.

On the record, this court ordered rehearing of a suit in equity involving
the issues whether the parties to a contract for sale of corporate stock
had made an oral agreement to rescind it after a new stock certificate,
with incomplete signatures, had been issued to the buyer, and, if so,
whether the statute of frauds, G. L. (Ter. Ed.) c. 106, § 6, would pre-
vent enforcement of the rescission agreement or whether there had
been sufficient acceptance and actual receipt by the original seller to
satisfy the statute as to the rescission agreement.

BILL IN EQUITY, filed in the Superior Court on February
9, 1943.

The suit was heard by *Pinanski*, J., on a master's report.

*W. M. Quade*, for Simplex Time Recorder Co.

*P. R. O'Connell*, for Mechanics National Bank of Worces-
ter.

*A. B. Campbell*, for the plaintiff.

WILKINS, J.   This bill in equity was originally brought against the Simplex Time Recorder Co., a Massachusetts corporation with its place of business in Gardner, to require the issue of three hundred sixty-nine common shares of the capital stock of the company which the plaintiff alleged had been sold to him by his father, Edward G. Watkins, deceased.   The defendant Mechanics National Bank of Worcester, executor under the will of Edward G. Watkins, was allowed to intervene as party defendant, seeking the issue of the shares to it.   The company claimed no interest in the shares.   The case was referred to a master, who filed a report, to which the plaintiff and both defendants brought in objections.   The judge entered an interlocutory decree sustaining one "objection" (exception) of the plaintiff, over-ruling all other "objections" (exceptions) of all parties, and confirming the report as modified.   (As to the inaccuracy of sustaining objections to a master's report, see *Meehan* v. *North Adams Savings Bank*, 302 Mass. 357, 362.) A final decree was entered adjudging the plaintiff to be the owner of the stock, and ordering the company to issue certificates therefor to the plaintiff.   The defendants appealed from both decrees.

The plaintiff has filed in this court a motion to dismiss the appeal of the defendant company on the ground that it is not a party aggrieved.   G. L. (Ter. Ed.) c. 214, § 19. The company, however, was ordered to pay costs.   This fact, without more, made it a party aggrieved.   *Bolster* v. *Attorney General*, 306 Mass. 387, 390–391.   The motion is, therefore, denied.

The following appears from the master's report:   The company was organized by Edward G. Watkins, who was in charge of production for many years.   He continued as president until his death, although he had been ill for several years, and in 1942 was confined to his home.   He owned three hundred sixty-nine out of five hundred seventy-six shares of common stock.   There was also an issue of preferred shares of which apparently he owned none.   On November 25, 1942, the plaintiff, who was vice-president and sales manager, called on his father, and an oral agree-

ment was made whereby Edward G. Watkins agreed to sell, and the plaintiff agreed to buy, the three hundred sixty-nine shares at $100 each, the purchase price to be paid as soon as a loan was obtained at the Gardner Trust Company with the stock to be part of the collateral. Edward G. Watkins requested his wife, Nellie O. Watkins, stepmother of the plaintiff, to get three certificates for three hundred sixty-eight shares, and he thereupon indorsed them in blank and handed them to the plaintiff. The latter took the certificates to one Underwood, the treasurer of the company, and requested him to transfer them into the plaintiff's name. Underwood at once went to see Edward G. Watkins, who instructed him to transfer all the common stock owned by him to the plaintiff. Pursuant thereto Underwood returned to the office of the company, removed from the safe a certificate for one share belonging to Edward G. Watkins, which was in another's name indorsed in blank, and gave all four certificates to one Lavallee, the bookkeeper, with instructions to transfer them and issue new ones. No transfer stamps were affixed to the old certificates, which Lavallee placed "in their respective places for the time being in the stock certificate book." Four new certificates for a total of three hundred sixty-nine shares in the plaintiff's name under date of November 25, 1942, were signed by Underwood as treasurer, and delivered to the plaintiff. The signatures of Edward G. Watkins, as president, were necessary to complete the issue. Later in the afternoon the plaintiff returned to his father's house to secure his signatures, and found him in great emotional distress, "the worst he had ever seen him." He "informed his father that if there was anything that he had done, especially with the stock transaction, to forget it that he would do nothing to displease him, that they would call the whole thing off." He did not on that or on any later occasion ask his father to sign the new certificates. The plaintiff carried the certificates in his pocket until November 28, when he redelivered them to Lavallee with instructions to put them back in the book as though nothing had happened and as though they never had been issued.

Lavallee placed them back in the book, marking them "void," and wrote on the stock ledger, "reversed November 28, 1942, transfer not made." Underwood subsequently drew a line through his signatures. Following the delivery of the stock to Lavallee the plaintiff told Underwood that the stock deal with his father was all off, that he had given the new certificates to Lavallee and told him to cancel them and put them back in the book, and that the old certificates could be kept in the safe. As a result of what the plaintiff said, Lavallee put the old certificates in an envelope marked "E. G. Watkins stock," and placed it in the company's safe where the old certificate for one share had been. On November 25 before the plaintiff returned to the home of his father, the latter both telephoned and wrote to one Ramsdell, an officer of the defendant bank in Worcester, asking him to come to Gardner, "as he had made the biggest mistake of his life in selling his stock to his son and did not know what he could do about it and wanted some help." On November 27 Ramsdell saw Edward G. Watkins, who suggested changes in his will, one being to leave his stock so as to result in equal holdings by Underwood and the plaintiff. In consequence, Ramsdell saw the attorney for Edward G. Watkins, who prepared a codicil, leaving the stock in trust, and, if it should be so held at his wife's death, bequeathing so much thereof as would, with any other shares the plaintiff might own, give the latter one half of all the common stock. The codicil was sent to Nellie O. Watkins, but was never executed. On December 7 an adjourned stockholders' meeting was held. The plaintiff presided as vice-president. Previously a proxy for the three hundred sixty-nine shares of Edward G. Watkins had been prepared by Underwood, and the plaintiff had agreed to get his father's signature. He had not obtained it, but stated they could go along with the meeting, and he would see that the proxy was taken care of. This, in fact, never happened. Edward G. Watkins was elected director. There is no provision in the by-laws that directors need not be stockholders. See G. L. (Ter. Ed.) c. 156, § 22. Subsequently, at a directors' meeting, Edward G. Watkins

was elected president. His condition had been getting gradually worse, and he died on December 15 at the age of seventy-seven. Two or three weeks after his father's death, the plaintiff requested Underwood to return the new certificates and, not receiving them, later asked for the old certificates. On January 20, 1943, after the will of Edward G. Watkins had been filed for probate, at a conference in the office of Willis E. Sibley, Esquire, attorney for the estate, at which also were present Ramsdell and one Byron, a trust officer of the bank, the plaintiff stated that he had told his father the deal was off and to forget all about it. On February 4, at a directors' meeting the plaintiff presented a letter requesting the issue of the three hundred sixty-nine shares and enclosing transfer stamps to place on the old certificates. On February 8 the directors voted not to issue the shares. No loan to the plaintiff was ever made by the Gardner Trust Company.

The master found "that no note or memorandum in writing of a contract or [*sic*] sale of 369 shares of stock of the Simplex Time Recorder Co. was signed by the plaintiff or his agent in that behalf, nor was anything paid to the plaintiff in part payment of said shares, nor so far as it is a question of fact was there any acceptance by Edward G. Watkins prior to his death of any part of said shares." The master also made a finding, referred to below, that certain acts of the plaintiff were "a surrender and abandonment of any rights that he had for the ownership of the stock in question." Appended to the report, in accordance with requests made by each party under Rule 90 of the Superior Court (1932), was a "Summary of Evidence Requested by the Plaintiff and the Defendants to Determine Questions of Law Raised by Objections, the Master Having Received a Transcript of All Evidence."

The judge sustained the plaintiff's second exception to the master's report, which was as follows: "The subsidiary findings show that the master's conclusion (paragraph 28 master's report) that the plaintiff's acts and statements were a 'surrender and abandonment of any rights that he had for the ownership of the stock in question' was clearly

wrong." This objection as brought in was not accompanied by any request that the master append to his report a summary of the evidence to enable the court to determine any question of law raised by it. See Rule 90 of the Superior Court (1932). Moreover, as phrased, the exception refers solely to the alleged inconsistency of the conclusion with the subsidiary findings, and does not raise the question whether the evidence was sufficient in law to support the finding. Consequently, although the plaintiff and the defendant bank have argued from it in their briefs, the summary of evidence appended under Rule 90 is not to be considered in this connection. *Morin* v. *Clark*, 296 Mass. 479, 483. *Meehan* v. *North Adams Savings Bank*, 302 Mass. 357, 362. *Buckley & Scott Utilities, Inc.* v. *Petroleum Heat & Power Co.* 313 Mass. 498, 507–508. *Buckley* v. *John*, 314 Mass. 719, 724.

The bank's answer originally alleged that the agreement of sale had been rescinded by the plaintiff and Edward G. Watkins, to which the plaintiff, by leave, replied setting up the statute of frauds, G. L. (Ter. Ed.) c. 106, § 6. On the question of rescission there was no express finding by the master, who, however, did find that the plaintiff's "action in telling his father they would call the whole thing off, his statement to Mr. Lavallee at the time of the re-delivery of the stock, and to Mr. Underwood on the same day and his subsequent statement at the conference held in Mr. Sibley's office and his action at the adjourned meeting of December 7, 1942, at which time the stock of Edward G. Watkins was voted by him as proxy, so far as it is a question of fact, was a surrender and abandonment of any rights that he had for the ownership of the stock in question." The bank thereafter by amendment pleaded for the first time such surrender and abandonment. The finding as to the plaintiff's "action in telling his father they would call the whole thing off," might, if it could stand, furnish some basis for an inference of assent to rescission on the part of the father. This view receives support from the findings, such as they were, that the master made with respect to the statute of frauds, which could have been pertinent only if there had been an oral

agreement of rescission.  In our decisions the words "abandonment," where mutual or assented to, and "rescission" have often been used synonymously.  See *Priest* v. *Wheeler*, 101 Mass. 479, 481; *Hobbs* v. *Columbia Falls Brick Co.* 157 Mass. 109, 111; *Hanson & Parker, Ltd.* v. *Wittenberg*, 205 Mass. 319, 326–327; *Mark* v. *Stuart-Howland Co.* 226 Mass. 35, 41–42.  To say that there was an abandonment by one party without the assent of the other is merely to state by paraphrase that there was a breach of contract.  An example of this use of the word is to be found in *Hartford Accident & Indemnity Co.* v. *Casassa*, 301 Mass. 246, 254.  The plaintiff by giving up "rights . . . for the ownership of the stock" could not escape liability to pay for the stock he had received unless his father in some way assented.  That there was an element of such assent in the master's finding is confirmed by the use of the word "surrender."  "Surrender" ordinarily carries the thought of a transfer of both possession and title. *Evans* v. *United States*, 153 U. S. 584, 591.  *Kessler* v. *Clayes*, 147 Mo. App. 88, 96.  See *Hagan* v. *Gaskill*, 15 Stew. (N. J.) 215, 217.  Consent of the transferee is implicit in such a transaction.  See, for example, *Slade* v. *Mutrie*, 156 Mass. 19, 21 (promissory note); *Attorney General* v. *Supreme Council American Legion of Honor*, 206 Mass. 183, 185 (certificate of a fraternal beneficiary corporation).  Compare uniform stock transfer act, G. L. (Ter. Ed.) c. 155, § 39. Intangible rights to stock could hardly be surrendered, but with the father's participation the new certificates might be surrendered in performance of an agreement for rescission. Whether the acts and conduct of the parties showed mutual assent to an abandonment or rescission is a question of fact. Such assent could rest on an implied agreement.  *Flaherty* v. *Goldinger*, 249 Mass. 564, 567.  *Russo* v. *Foster*, 305 Mass. 1, 3.  Black on Rescission and Cancellation (2d ed.) §§ 526, 528.  The agreement might, of course, have been express. In either event, the master should have made a finding containing the entire conversation on the subject between father and son to the end that the issue of rescission might be intelligently determined.

The judge was technically right in sustaining this excep-

tion. The conclusion was inconsistent with the subsidiary findings, which must prevail. *MacLeod* v. *Davis*, 290 Mass. 335, 337–338. *Kasper* v. *H. P. Hood & Sons, Inc.* 291 Mass. 24, 25. Those findings, either conditional or qualified as to time, were that the plaintiff had told his father "that if there was anything that he had done, especially with the stock transaction, to forget it that he would do nothing to displease him"; and "that he would do nothing further about the transfer until he was better able to discuss it." The finding as to voting the stock by proxy was in error, as appears from the summary of the evidence reported in connection with another of the plaintiff's exceptions to the report. We do not determine whether parol evidence was admissible to contradict the records of the meeting. See *Commissioner of Banks* v. *Cosmopolitan Trust Co.* 253 Mass. 205, 216–217. It is conjectural whether the master would have considered the other subsidiary facts sufficient standing by themselves to warrant the same ultimate conclusion.

It would have been a wise exercise of judicial discretion if the judge after sustaining this exception had recommitted the case to the master of his own motion, as by this action of his the report was shorn of the only ultimate finding even remotely appertaining to what was apparently the principal issue tried before the master and is, in any event, the main question still to be determined.

Accordingly, it is our opinion that in order to do justice, this suit should now be recommitted for rehearing, as not enough appears on the face of this inadequate report to enable this court to reach a proper conclusion. It is "substantially incomplete as to essential issues." See *Siciliano* v. *Barbuto*, 265 Mass. 390, 392. "Where the facts on which the rights of the parties depend have not been ascertained at the trial it is within the power of the court in its discretion and of its own motion, to recommit the case for retrial." *Comstock* v. *Soule*, 303 Mass. 153, 159. See *New England Cement Gun Co.* v. *McGivern*, 218 Mass. 198, 205; *Rubenstein* v. *Lottow*, 220 Mass. 156, 164; *Rioux* v. *Cronin*, 222 Mass. 131, 133; *DeVeer* v. *Pierson*, 222 Mass. 167, 175;

*Neafsey* v. *Chincholo*, 225 Mass. 12, 17; *Hathaway* v. *Huntley*, 284 Mass. 587, 593–594. Whether the rehearing should be before the court or before a master is for the Superior Court to determine. We are aided in reaching this result because it is apparent from the summary of evidence, which we have examined in connection with the appropriate exceptions to the master's report (which we do not now need to consider), that findings relative to rescission and acceptance and actual receipt under the statute of frauds could have been made.

It is desirable to refer to certain questions which will arise on rehearing. The general rule is that a contract within the statute of frauds may be orally rescinded. *Ballou* v. *Billings*, 136 Mass. 307. *Flaherty* v. *Goldinger*, 249 Mass. 564, 568. Where, however, the prior contract is enforceable and the contract to rescind involves the retransfer of some subject matter which is within the statute, there must be a compliance with its requirements. Am. Law Inst. Restatement: Contracts, §§ 222, 407. Williston on Contracts (Rev. ed.) § 592. See *Alden* v. *Thurber*, 149 Mass. 271. If Edward G. Watkins and the plaintiff orally agreed to rescind the agreement of sale of the three hundred sixty-nine shares represented by the four stock certificates which had been delivered by the plaintiff to the company for the purpose of a new issue which was still to be made owing to the incompleteness of the unsigned new certificates, it would be necessary — there being no writing or part payment — that Edward G. Watkins "accept part" of the old certificates "and actually receive the same." G. L. (Ter. Ed.) c. 106, § 6 (1). Since the old certificates were the only valid ones representing those three hundred sixty-nine shares, the mere agreement to rescind, if made, would in itself be an acceptance of those existing choses in action under the statute. General Laws (Ter. Ed.) c. 106, § 6 (3), reads: "There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods." Williston on Contracts (Rev. ed.) §§ 542, 543.

The further statutory requirement of actual receipt is a more difficult question. Here again there was no finding by the master. Such receipt need not have been by Edward G. Watkins in person. It could have been by a bailee or agent or by some one at his direction. *Snow* v. *Warner*, 10 Met. 132, 138. *Houghton & Dutton Co.* v. *Journal Engraving Co.* 241 Mass. 541, 544. *New London Ship & Engine Co.* v. *Simpson*, 254 Mass. 76, 78–79. "Apparent authority to do an act may be created by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes a third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Am. Law Inst. Restatement: Agency, § 27. The receipt could have been of any part, however small. *Garfield* v. *Paris*, 96 U. S. 557, 562–563. Williston on Sales, § 94. The return of the certificate for one share to the company, from which it had been received by the plaintiff, could be found to be a sufficient receipt. Williston on Sales, § 95.

If a finding is made as to the full conversation between the plaintiff and Edward G. Watkins, it may perhaps be open to find whether they agreed upon the return of the new, and as yet incomplete, certificates to the company to be canceled in exchange for the relinquishment by the company of the old, and only valid and effective, certificates representing the shares in question. Then a further finding may be possible as to whether the placing of the four old certificates in the company safe in an envelope marked "E. G. Watkins stock" was a holding or receipt by the company or Underwood or Lavallee as agent for Edward G. Watkins. One factor of importance might be the circumstances as to the original possession of the certificate for one share by the company as indicating whether the company might again, without further authorization from Edward G. Watkins, become the bailee of that certificate, and of perhaps additional stock certificates on his behalf. Depending on the nature of the findings this might be a legal delivery to Edward G. Watkins, or the creation of an equitable title in him (see *Stuart* v. *Sargent*, 283 Mass. 536, 542; *Whitney* v. *Nolan*, 296 Mass. 419, 425).

The entry is to be: Motion to dismiss denied; final decree reversed; interlocutory decree confirming report of master as modified reversed; report of master set aside; the suit to stand for further proceedings in the Superior Court.

*Ordered accordingly.*