PHILIP PROVOST & another *vs.* JOSEPH PAWLOWSKI.

Plymouth. May 6, 1971. — June 11, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, QUIRICO, & BRAUCHER, JJ.

*Equity Pleading and Practice,* Rehearing.

In a suit in equity to secure specific performance of an agreement signed by the defendant and his mother to sell certain real estate to the plain-tiffs, who had paid to the mother some of the price in cash and some in "services rendered" before she died, findings by a master in his report were insufficient to provide any proper basis for a decision, and a final decree dismissing the bill was reversed and the case remanded for fur-ther proceedings before a master or the trial court as it should determine.

BILL IN EQUITY filed in the Superior Court on February 6, 1967.

The suit was heard by *Brogna,* J., on a master's report.

*Alan H. Tufankjian,* for the plaintiffs, submitted a brief.
*Jerome H. Fletcher* for the defendant.

CUTTER, J. Provost and his wife entered into a written

agreement (May 21, 1964) under which Mrs. Malvina Pawlowski and her son Joseph were to sell for $4,500 to the Provosts real estate (the locus), owned by the Pawlowskis as joint tenants and not as tenants in common. Under the agreement beginning July 1, 1964, the Provosts were to pay Mrs. Pawlowski $50 a month until the Provosts could obtain a mortgage when "payments made to date" were to be "deducted from the original . . . price." It was stipulated in the written agreement signed by all four parties that payments were to be made to Mrs. Pawlowski and that, on her death, payments were to be made to Joseph. Payments of $50 each were made to Mrs. Pawlowski early in July and August, 1964. No further money payments were made.

Subsequent payments, by an agreement (not shown to have been written) between Mrs. Provost and Mrs. Pawlowski were made in "services rendered" by the Provosts to Mrs. Pawlowski. Receipts for September, October, and November, 1964, for $50 each were given and signed by Mrs. Pawlowski. Receipts for thirteen subsequent monthly payments were made for $100 each ($1,300 in the aggregate). On December 18, 1965, there was a receipt, signed by Mrs. Pawlowski, for "services rendered and payment for Real Estate Sales Agreement dated May 21, 1964, between Pawlowski and Provost." Mrs. Pawlowski could neither read nor write except that she could sign her name. "The receipt was made out at" Mrs. Pawlowski's request "for taking care of her, feeding her, and allowing her to stay at" Mrs. Provost's house on occasions.

Mrs. Pawlowski died on January 10, 1966. "Joseph Pawlowski never had any conversation with . . . [either] Provost in regard to the property." He "was never paid any money, nor was he tendered any money by the Provosts, nor was he ever asked for a deed."

The Provosts by their bill seek specific performance of the written agreement. The foregoing facts were set out in a master's report which was confirmed. By final decree, the bill was dismissed. The plaintiffs appealed.

One owner cannot be bound by the unauthorized acts of another with whom he holds title. See *Goodhue* v. *Leonardi*, 336 Mass. 156, 158. Joseph Pawlowski, however, did consent in writing to having payments made to his mother at the rate of $50 a month. The $100 in cash paid to his mother in July and August, 1964, pursuant to the written agreement, were payments clearly authorized by him at the rate of $50 a month.

The language of the somewhat informal, vague, original agreement suggests that one reason for making payments directly to Mrs. Pawlowski during her life may have been to provide for her support. If the "services" furnished to Mrs. Pawlowski were fairly worth $50 a month, the Provosts could be found to have made an arrangement with her reasonably within the contemplation of the original agreement. On the other hand, it may be that the intention was not to give the Provosts any such long period as in fact elapsed in which to obtain a mortgage without the payment of rent.

The master should have made more ample findings, if the evidence justified them, about the background and circumstances of the arrangement. If what was done was in fact within the reasonable contemplation of all the parties, the Provosts should have been given credit against the purchase price of at least $50 a month for their services. Specific performance then could be ordered, conditioned upon payment of the balance. In the alternative, an equitable refund could be required. Of course, if only cash payments were contemplated, a different result would be required.

We conclude that the meager master's report does not provide any proper basis for a decision. The report, already once recommitted, remains in a form still seriously insufficient. As in *Watkins* v. *Simplex Time Recorder Co.* 316 Mass. 217, 224–225, "it is our opinion that in order to do justice, this suit should now be recommitted [to the Superior Court] for rehearing, as not enough appears on the face of this inadequate report to enable this court to reach a proper conclusion."

The final decree is reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion. These proceedings may be either before the court or a master, as the Superior Court may determine.

*So ordered.*