Black, J.
This is an action of contract brought on October 21, 1977, by the plaintiff, Cape Cod Bank & Trust Company, based upon a written instrument of guarantee executed by the defendants, Paul E. Affleck, Yvette D. Affleck, Constance L. LeTendre, and Yvon J. LeTendre, dated August 31, 1970, pursuant to the terms of which they jointly and severally undertook to absolutely and unconditionally guarantee all liabilities, both direct and indirect, then existing or thereafter arising as a result of money loaned to Residential Rehabilitation Centers, Inc., by the plaintiff up to but not exceeding the sum of seventy thousand dollars ($70,000.00). The guarantee contained a provision that every guarantor waived “any and all presentment, demand, protest, notice of nonpayment, and any and all notices of every kind." The complaint further alleged that on April 18, 1975, Residential Rehabilitation Centers, Inc. had made and delivered to the plaintiff its promissory note in the amount of fifty-two thousand dollars ($52,000.00), payable “on demand”; that written demand for payment had been made upon Residential Rehabilitation Centers, Inc. on October 19, 1977; and that payment had not been made on the outstanding balance of twenty-eight thousand eighty dollars and thirty cents ($28,080.30). Judgment was sought in that amount plus interest at the rate of nine percent (9%), plus costs and reasonable attorney’s fees in the amount of seven thousand twenty dollars ($7,020.00), all as provided in the said note and guarantee.
The defendants’ answer was essentially that the defendants admitted execution of the guarantee but contended that the plaintiff agreed to waive the guarantee, and that by virtue of the waiver, the obligation incurred by the defendants on the guarantee was discharged. It was also one of the defendants’ principal contentions that the terms and conditions of the underlying debt were altered without the knowledge or permission of the guarantors, and that the *157 guarantors were accordingly discharged from liability as guarantors.
A Supplemental Complaint was filed by the plaintiff on August 29, 1978, stating that the outstanding principal balance as of August 23,1978, was twelve thousand five hundred forty-two dollars and thirty-six cents ($12,542.36) and reflected that the sum of sixteen thousand one hundred and sixty-three dollars and fifty-nine cents ($16,163.59) had been received from the defendant, Paul E. Affleck, on December 12, 1977, in consideration of a partial release of an attachment granted in connection with the complaint. The $16,163.59 was applied as follows: $15,000 towards principal; $942.45 to attorney’s fees; and $221.14 to interest.
On May 23, 1979, the Court made a finding for the plaintiff in the sum of $8,929.89 and ordered that judgment enter with interest at 9% from the date of the note to the date of entry of judgment. The Court further ordered that the sum of $2,700.00 be added as fair and reasonable compensation for attorney’s fees.
Upon motion duly made by the defendants and after hearing, the Court on June 27, 1979 amended the earlier findings and ordered the entry of a new judgment in the sum of $8,604.98 (principal) with interest in the sum of $2,070.47 up to March 21, 1979 and with interest on the principal sum at the rate of 9% thereafter to the date of judgment as amended and awarded $3,000.00 attorney’s fees.
The defendants, Yvon and Constance LeTendre, claiming to be aggrieved by certain rulings of law made by the trial court, filed a draft report. This report was ordered dismissed by the trial judge essentially because the appellant failed to serve the trial judge with a copy of the draft report. The Court did not determine at that time the contention made by counsel for the appellee that no service had been made upon him.
The order for dismissal was duly reported to the Appellate Division which affirmed the action of the trial judge. [See Cape Cod Bank and Trust Co. v. Affleck, 1981 Mass. App. Div. 12; 2 Mass. Supp. 115.] Further appellate review was sought in the Supreme Judicial Court, which reversed the decision and order of the Appellate Division. The case was remanded to the trial court for further proceedings consistent with the opinion of the Supreme Judicial Court [See Cape Cod Bank and Trust Co. v. LeTendre, Mass. Adv. Sh. (1981) 2055, 2060; 425 N.E. 2d 355, 358).
In accordance with the rescript, the trial court conducted a hearing to determine whether and to what extent the failure by the appellants to comply with the provisions of Rule 64(c)(3), Dist./Mun. Cts. R. Civ. P. had interfered with the accomplishment of the purpose implicit in the requirements of the rule and to examine the extent to which the appellee was able to demonstrate prejudice. The trial court found that neither substantial prejudice occurred to the appellee nor was the appellants’ failure so egregious in this case that it required dismissal of the appeal.
Reviewing the evidence adduced during the trial on the merits of the case, there was evidence tending to show that the promissory note upon which the plaintiff seeks to hold the defendants liable was in the original, principal amount of $52,000.00, was dated April 18, 1975, and called for payment on demand. It was secured by an assignment of the accounts receivable of Residential Rehabilitation Centers, Inc., its maker. The evidence showed that, as of October 19, 1977, the time of the commencement of this action, there was a principal balance due to the plaintiff on the said note of $27,763.50. The evidence also showed that the plaintiff received as payments towards said amount the follow *158 ing sums:
$16,163.59 from the defendant, Paul E. Affleck
$ 1,029.77 from Residential Rehabilitation Centers, Inc.
$ 3,612.4/ ao..! Residential Rehabilitation Centers, Inc. Bankruptcy payments
$ 2,258.66 by promissory notes of Residential Rehabilitation Centers, Inc. Pursuant to plaintiffs acceptance of Residential Rehabilitation Centers, Inc.’s Bankruptcy plan of arrangement
$23,388. 49 Total payments received.
The Court originally found for the plaintiff in the sum of $8,929.89, with interest in the amount of $3,281.73, costs in the amount of $98.95, and attorneys’ fees in the amount of $2,700.00.
The defendants, thereafter, filed a Motion For A New Trial Or To Amend Findings And Judgment. The Court scheduled a hearing on said Motion at which time arguments from counsel were heard, but the Court took no additional evidence. The Court denied the relief requested in the defendants’ Motion but amended the findings and order for judgment. Judgment for plaintiff now stands in the amount of $8,604.98, together with the sum of $2,274.08 for interest, $3,000.00 for attorney’s fees, for collection, and costs in the sum of $98.95.
At trial, the defendants introduced evidence which showed that, in December of 1974, a meeting took place between Yvon J. LeTendre, one of the defendants, and Larry K. Squire, Vice-President and loan officer of the plaintiff, who testified that he had authority to make loans for the plaintiff Bank and to otherwise represent the plaintiff. Yvon J. LeTendre testified that a request for new financing was made by Mr. LeTendre on behalf of the Corporation as far back as one (1) year prior to December 3 974. At that time, financing was denied by Mr. Squire. During the ensuing twelve (12) month period, Mr. LeTendre testified that the Corporation markedly reduced its operating deficit from an amount in excess of $100,000.00 to approximately $15,000.00, as reflected in the profit and loss statement for the period ending September 1974. Mr. LeTendre also testified that these profit and loss statements were presented by him to Mr. Squire in support of a renewed request for new borrowings by both the Corporation and the Trust. Mr. Le Tendre testified that he sought two (2) new loans: one (1) in the name of the Trust and one (1) in the name of the Corporation. This new borrowing approached the total sum of $127,500.00 Mr. LeTendre further testified that as part of this refinancing transaction, at least as far as the Corporation was concerned, there would be included an accompanying release of the personal guarantors, for the Corporation would thenceforward stand on its own credit. Mr. LeTendre further testified that there existed a blanket guarantee for trust obligations with a maximum amount of $40,000.00 and that, for Trust obligations only, he would be willing to increase the amount of the debt limit on the guarantee. Mr. LeTendre testified that this proposal was made by him to Mr. Squire at the Orleans Branch Office of the Cape Cod Bank and Trust Compnay and that Mr. Squire indicated he would first have to check with the main office of the Bank with respect to the request. Subsequently, a second meeting was held between Mr. LeTendre and Mr. Squire concerning the request for new borrowings. At this meeting, the defendant, Yvon LeTendre, testified that he was told by Mr. Squire that he, Mr. Squire, had been given the sole authority to decide whether or not to release the defendants from their guarantee of the obligations of Residential Rehabilitation Centers, Inc., and that it was his decision to release the defendants from that contract of personal guarantee. The defendant, Y von J. LeTendre, further testified that he requested confirmation of this decision in *159 writing and that this confirmation was given in a letter dated December 27,1974 and written by Larry K. Squire. (It should be noted, however, that the letter in question was addressed to Rehabilitation Realty Trust and set forth the terms and conditions upon which borrowing would be made by the Trust. It also expressly stated that “As you know, this in no way affects Residential Rehabilitation Centers, Inc., or any of its dealings with this bank’ ’.) The defendant, Yvon J. LeTendre, also testified that the promissory note upon which this action was based was executed in accordance with the instructions contained in that December 27, 1974 letter. The witness for the plaintiff, Larry K. Squire, testified that he did not recall having such a particular meeting with defendant LeTendre or what was discussed at the meeting. He further denied that at any meeting he agreed to release the defendants from their contracts of personal guarantee, but Mr. Squire testified to preparing, signing, and forwarding the December 27,1974 letter to Mr. LeTendre. The evidence further showed that, on January 3, 1975, two (2) new borrowings did occur: one (1) by the Trust and one (1) by the Corporation, that the total of said borrowings was in the amount of $127,500.00, and that a new blanket guarantee was executed on behalf of the Trust only and which increased the limit of liability to the sum of $70,000.00 All of these dealings were testified by Mr. LeTendre to have been the substance of both his discussions with Mr. Squire and their agreement resulting from these discussions. Mr. LeTendre testified that the letter of December 27, 1974 was written at Mr. LeTendre’s request and as Mr. Le Tendre testified, was written as a result of discussions (with Mr. Squire) concerning the new borrowings by the Trust and the Corporation and the identity of the signatories required for both entities. Mr. Le Tendre testified that he was satisfied with the wording of the letter to the extent the letter distinguished between new borrowings by the Trust and the Corporation, specified the requirement of an increased guaranty for the Trust, and declared that future borrowings by the Corporation would require certain corporate officers to sign in their respective official capacities. Mr. LeTendre further testified that it was his understanding that this letter reflected Mr. Squire’s agreement that the personal guarantors were released from all liability for all future corporate borrowings.
Although Mr. Squire, as previously stated, admitted preparing, signing, and forwarding the aforementioned letter to Mr. LeTendre, he would not recall any specific meeting with Mr. LeTendre nor any specific reason why the letter was drafted and sent, other than Mr. LeTendre’s request for it. Mr. Squire testified that the signatures referred to in the letter as prerequisites for corporate borrowings did not represent a change from the existing officers w ho had signed on behalf of the Corporation during the previous four (4) years. M i. Squire did not recall any details of what he testified to be several meetings between Mr. LeTendre and him near the latter part of December 1974. The trial judge found that the subject letter did not vary, waive, or release the guarantee.
Evidence was introduced that, in December of 1976, the plaintiff was experiencing difficulty in obtaining payment of the April 18,1975 note from Residential Rehabilitation Centers, Inc., and that, in fact, the promissory note was in default. Mr. Larry Squire testified on behalf of the plaintiff, both under direct and cross-examination, that no payments had been made on principal and that the monthly interest payments were also not forthcoming. Mr. Squire further testified that in December of 1976, carrying over to January of 1977, he had several discussions with Mr. Paul E. Affleck concerning payment of the note. Mr. Squire testified that he was advised by Mr. Affleck that certain retroactive payments were due from the Commonwealth of Massachusetts for services *160 rendered puisuant to the Chapter 766 Program and that these monies were expected in the early part of 1977. Mr. Squire testified that, in February 1977, the Corporation made a payment of several thousand dollars on the note and that these monies were 766 Funds which had been represented to be due the Corporation in previous discussions between Mr. Affleck and Mr. Squire. Mr. Squire testified that the Bank, through its attorneys, took action to place liens on the accounts receivable due from the Commonwealth of Massachusetts to Residential Rehabilitation Centers, Inc., and which had been pledged by the Corporation to secure the April 1975 promissory note. As a result of said action, a substantial sum of money due to the Corporation was tied up. Thereafter, discussions took place between Mr. Squire, the attorneys for the Bank, officials of the Commonwealth of Massachusetts, and an officer of Residential Rehabilitation Centers, Inc. (Paul E. Affleck) concerning the release of the Commonwealth funds to the Corporation. Mr. Squire testified that the aforementioned action concerning the demand on the Commonwealth of Massachusetts Department of Public Welfare, pursuant to the assignment of accounts receivable, was taken in March of 1977. There was no evidence that the defendants, Yvon J. and Constance L. LeTendre, had notice concerning the difficulties that the plaintiff was having in obtaining payment on the aforementioned promissory note or concerning its actions taken with respect to placing liens on the accounts receivable of the Corporation. Mr. LeTendre testified that, in December of 1976, he had resigned his office in the Corporation and had no further dealings with the Corporation or with the Bank on behalf of the Corporation from that point forward. The plaintiff agreed to release its lien on the accounts receivable of the Corporation in return for a promise of a principal payment of $10,000.00 and monthly payments thereafter of $1,500.00. Evidence was introduced both through Mr. Squire's testimony and the direct testimony of Paul E. Affleck that the aforementioned proposal of payment made by the Corporation and agreed to on behalf of the Bank by Mr. Squire was the result of a series of discussions and meetings between the Bank and the Corporation and was in fact the subject of a corporate meeting in April of 1977 at which time the proposal was formulated, voted on by the directors of the Corporation, accepted by the Corporation, and approved for presentation to the Bank. Mr. Paul E. Affleck, Larry Squire, and Matthew McNamara, present executive director of the Corporation, all testified that the aforementioned plan was proposed to the Bank and that the Bank acquiesced and accepted the same. During the period from April until August of 1977, the Bank received no payment on principal or interest, but yet, it did not call the defaulted note nor take any other measures to secure payment of this loan. Mr. Paul E. Affleck testified that he resigned his position as executive director of the Corporation in May of 1977 and had no further contact with the Corporation from that point forward. The evidence showed, through testimony of Matthew J. McNamara and the introduction into evidence as defendants' exhibits of two (2) checks that, pursuant to the aforementioned arrangement between the Corporation and Mr. Squire, a payment in excess of $9,000.00 was made in August of 1977 upon receipt of certain retroactive payments by the Corporation. By means of the second check introduced into evidence and the testimony of Mr. McNamara, it was indicated that the proposed payment plan of $ 1,500.00 per month was then implemented in September of 1977, for the first payment of $ 1,500.00 was made and accepted by the Bank at that time. Mr. LeTendre testified that Mrs. LeTendre and he had no notice or knowledge of said payments or of the release of rights under the assignment of accounts receivable. Mr. LeTendre further testified that neither he nor Mrs. LeTendre consented to nor agreed to the *161 release of the bank’s lien on the accounts receivable nor the payment plan of $ 1,500.00 per month. Mr. Squire testified that the plaintiff bank released its lien on the accounts receivable due to the refusal of the Commonwealth of Massachusetts to make payments directly to the Bank. Mr. Affleck and Mr. Squire testified that, in August of 1977, a meeting took place between Mr. Squire, Mr. Affleck, and Mr. LeTendre at which Mr. Squire was advised that the Corporation was seriously in arrears in its rent to the Trust and that Mr. Affléck had heard rumors that the Corporation was contemplating Bankruptcy. The evidence showed that notwithstanding this information, Mr. Squire declared that he had been pleasantly surprised by a recent payment from the Corporation.
The evidence further showed that, on September 20, 1977, the Corporation filed a petition for an arrangement, pursuant to Chapter 11 of the Federal Bankruptcy Laws, and one month later, in October 1977, the Bank commenced action against the present defendants as guarantors of the corporate note. Mr. Squire testified that no notification had been given to Mr. or Mrs. LeTendre from January 1, 1977 to October 1977, the time of filing suit, about the status of the note, the interactions and agreements between the Bank and the Corporation with respect to the note, or any payments or lack of payments made by the Corporation on this note. Mr. LeTendre testified that the first notification Mrs. LeTendre and he received concerning the status of the promissory note and the actions taken by the plaintiff Bank since December 1976 came when they were served with a summons, a copy of the Complaint filed in this action, and a notice that their home had been attached. The aforementioned action of notification by the plaintiff occurred on or about October 24, 1977.
Mr. Larry Squire testified that, as of October 19, 1977, there was a principal amount due on the note of $27,763.50. Furthermore, Mr. Squire also testified that payments had been received from the Corporation, one of the defendants, and the Bankruptcy Court totalling $20,805.83. and that the plaintiff is the holder of promissory notes from Residential Rehabilitation Centers, Inc. in the sum of $2,582.66. The evidence was conflicting as to the exact apportionment of these payments to principal, interest, and attorney's fees. No attorney testified about the reasonableness of the attorney’s fees assessed in this case: however, the Court was familiar with the presentation of the case and had before it the written materials filed in this action and a statement made orally to the Court by plaintiff s counsel that he had expended 125 hours preparing and presenting the case.
The Court ruled that the defendants were entitled to credit for all payments made to date plus the amount of the debt paid to plaintiff through its acceptance of the Chapter 11 plan of arrangement filed by the principal obligor.
The evidence introduced at trial showed that the plaintiff had taken the following actions with respect to obtaining payment of the April 1975 promissory note from Residential Rehabilitation Centers, Inc., the principal obligor; Larry K. Squire testified that, in September of 1977, when the Corporation filed Bankruptcy, the plaintiff was owed the sum of $27,763.50. The plaintiff, however, filed a proof of claim in the Corporation's bankruptcy proceeding. This proof of claim, totalling approximately $35,000.00, represented the principal amount alleged to be due, plus $7,000.00 in attorney’s fees. Mr. Squire testified that, in December of 1977, the plaintiff received payment from one of the defendants. This payment consisted of the sum of $16,163.59, and $15,000.00 of this amount was applied by the plaintiff to the principal due at that time. Although the plaintiff was then participating in the negotiation of a Bankruptcy plan of arrangement for the principal obligor on the note, Mr. Squire testified *162 that the plaintiff then filed with the Bankruptcy Court an Amended Proof of Claim in which the $16,163.59 payment was deducted from the amount claimed as owed. Mr. Squire testified that the plaintiff then assented to a plan of arrangement whereby it was scheduled to receive 40% of not what was due to it at the time of the Corporation’s Bankruptcy filing but 40% of $18,062.36, or the sum of $7,224.94.
At the close of the trial but before closing argument, the defendants submitted their requests for rulings of law. The defendant also submitted several requests for finding of fact, which the trial judge declined to rule upon, citing Castano v. Leone, 278 Mass. 429, 431 (1932). The trial judge’s ruling was correct. The defendants’ requests for rulings of law, designated “conclusions of law”, were disposed of as follows:
1. That a term of condition in a contract may be waived by the obligee. (Allowed)
2. That a waiver of a contractual condition need not be supported by consideration or detrimental reliance. (Allowed)
3. That a loan officer of CCB&T had the apparent authority to waive formal notice of termination as required by a contract of personal guarantee. (Denied. This request calls for a finding of fact not required to be made upon the evidence. Costonis v. Medford Housing Authority, 343 Mass. 108, 113 [1961].)
4. That Larry K. Squire, loan officerfor CCB&T, waived the requirement that the LeTendres notify CCB&T by registered mail of the termination of their personal liability as guarantors of RRCI debts. (Denied. This request calls for a finding of fact not required upon the evidence. Reid v. Doherty, 273 Mass. 388, 389 [1930]; Kelsey v. Hampton Court Hotel Co., 327 Mass. 150, 152 [1951].)
5. That the LeTendres’ effectively terminated their contracts of personal guarantee. (Denied. This request calls for a finding of fact not required upon the evidence. See Holt v. Silver, 169 Mass. 435, 458 [1897]; Priest v. Wheeler, 101 Mass. 479, 481 [1869].)
6. The CCB&T elected to file a claim in the bankruptcy proceedings instituted by RRCI instead of pursuing the defendants directly on their contracts of personal guaranty. (Denied. This request calls for a finding of fact not required to be made upon the evidence. Furthermore, this request is immaterial in view of the language in the instrument of guarantee, providing that any single or partial exercise of any power or right under guarantee would not preclude other or further exercise thereof, or the exercise of any other power or right thereunder. See Town Bank & Trust Co. v. Silverman, 3 Mass. App. Ct. 28, 31-32 [1975].)
7. That by filing its claim in the Bankruptcy Court, CCB&T elected to settle for whatever the court judged to be a fair claim and is,, therefore, precluded from seeking the remainder from the defendants. (Denied, Participation by the bank in the bankruptcy proceedings did not constitute a waiver of its right to recover from the guarantors. Merrimack Valley National Bank v. Baird, Mass. Adv. Sh. [1977] 1247, 1253).
8. That even were the defendants liable, they could seek reimbursement from RRCI. (Denied. This request is immaterial since it does not relate to any issues of law raised in the pleadings or by the evidence.)
9. The contracts of personal guaranty are covered by the general law of guarantee. (Allowed)
10. That according to law of guarantee, any extension of time for the payment of the guaranteed debt releases the guarantor from all liability unless the guarantor consents knowingly to the extension of time. (Allowed)
11. That according to the law of guarantee, any change in the underlying *163 contract which increases the guarantor's risk without his knowledge and consent releases the guarantor from his contract of guarantee. (Allowed)
12.That Yvon J. LeTendre was not informed (nor did he consent to the fact) that RRCI had decided not to pay and CCB&T had decided to accept several months no payments upon the note signed April 18, 1975. (Denied. This calls for a finding of fact not required upon the evidence. See Community National Bank v. Loumos, Mass. App. Ct. Adv. Sh. [1978] 38; Juergens v. Venture Captial Corp., Mass. App. Ct. 274. 278 [1973].)
13. That Yvon J. LeTendre was not informed (nor did he consent to the fact) that RRCI and CCB&T negotiated several alternative payment schedules commencing on or about April 16, 1977. (Denied. See reasons given in number 12, supra.)
14. The plaintiff has the burden of proving by a preponderance of the evidence every element of its prima facie case. (Allowed)
15. Proof of the preponderance of evidence requires preponderance of credible testimony, not balance of probabilities. (Allowed)
16. Where the evidence shows no greater likelihood that facts which must be proved by the plaintiff really existed than that such facts did not exist, necessary preponderance of evidence in favor of existence of such facts is lacking, and the plaintiff has failed to prove its case. (Allowed)
17. An issue is proved by a preponderance of the evidence when evidence is introduced which makes it appear more likely or probable in the sense that actual belief in its truth, derived from the evidence, exists in the mind of the tribunal notwithstanding any doubts that may still be there. (Allowed)
18. The plaintiff has failed to introduce testimony sufficient to prove by a preponderance of evidence every element of its prima facie case. (Denied. See findings of fact.)
19. The defendants have introduced testimony sufficient to prove by a preponderance of evidence that they were discharged from the personal guarantee between themselves and the plaintiff in December of 1974. (Allowed. 1 do not so find.)
20. The defendants have introduced testimony sufficient to prove by a preponderance of evidence that they were discharged from any obligations under the personal guarantee as a result of the actions of the plaintiff in failing to notify them of the agreement to alter payment terms of the promissory note as well as the inability of Residential Rehabilitation Centers, Inc. to pay the same. (Denied. I find that the defendants waived notice in their contract of guarantee.)
21 .The plaintiff has failed to prove by a preponderance of evidence that there was in existence at the time the antecedent debt was created, a contract of personal guarantee between itself and the defendants guaranteeing said debt. (Denied)
22. For a proposition to be proved by a preponderance of the evidence, it is not enough that mathematically chances somewhat favor the proposition to be proved. (Allowed)
23. The defendants have introduced testimony sufficient to prove by a preponderance of evidence that their right to seek recourse against the maker of the promissory note, RRCI, was impaired by the plaintiffs failure to notify them of the Corporation’s condition and its modification of the payment provisions of the promissory notes. (Denied. I find that the defendants waived notice in their contract of guarantee.)
24. A creditor who gives further time to a debtor releases a guarantor of the extended contract unless the guarantor assents to the extension of time or *164 ratifies it. (Allowed)
25. The defendants have proved by a preponderance of evidence that the modification of the promissory note agreed to by the plaintiff and corporation, materially increased the defendants' risk in that by the time the plaintiff informed them of the Corporation's financial condition and failure to pay the promissory note said Corporation had already a petition in the Bankruptcy Court. (Denied. See Nadeau v. Clough, 47 Mass. App. Dec. 33, 37-38 [1971]. This is not a request as to the sufficiency of evidence but calls for a finding of fact.)
26. The defendants have proved by a preponderance of the evidence that the liability for which the plaintiff seeks to hold them accountable in this action resulted from the modification in the payment terms and conditions of the promissory note agreed to by the plaintiff and corporation. (Denied. See Nadeau v. Clough, supra and cases cited therein.)
27. The creditor (plaintiff in this action) owes a duty to the guarantor (defendants herein) not to impair any right which the guarantor may have by subrogation upon satisfaction of the obligation. (Allowed)
28. The defendants have proved by a preponderance of the evidence that the plaintiff breached its duty not to impair the aforementioned rights of the guarantor by failing to notify the defendants of its modification of the payment terms as well as its inability to obtain payment of the promissory note from the corporation until after the corporation had filed bankruptcy thereby substantially impairing the defendants’ right to pay the obligation and by subrogation seek satisfaction from said Corporation. (Denied. Calls for finding of fact not required on the evidence. See the Nadeau case, supra; Memishian v. Phipps, 311 Mass. 521, 522 [1942].)
29. An agreement between the maker and the payee-holder of a note for extending the time the payment of the note discharges an indorser of the note unless the indorser assented thereto or a right of recourse against him was expressly reserved. M.G.L.A. c. 106, §3-606 (1958). (Allowed)
30. A person cannot legally be forced against his will to be made a party to an appreciably more hazardous bargain than he ever voluntarily entered himself. (Allowed)
31. If a person is forced to accept liability in situations in which he did not contract to accept said liability, this person is being deprived of property without due process of law and in violation of both the Fourteenth Amendment and the Constitution of the Commonwealth of Massachusetts. (Allowed)
32. A creditor who has full knowledge that the debtor is failing financially cannot delay asserting its rights against the debtor to the detriment of the guarantors of the debt instrument unless the guarantors either consent to this conduct or are told by the creditor of the debtor’s peril so that guarantors may act to protect their own rights and financial well-being. (Allowed)
33. If a creditor does decline to act promptly in the situation given above, the unconsenting and uninformed guarantors of the debt instrument are discharged of all liability therefor. (Allowed)
34. That as a matter of law, such extensions of payment beyond what was understood when the note was signed have released the LeTendres and the Afflecks from their contract of personal guaranty, assuming it had not already been terminated. (Denied. This request is tantamount to a request that a finding is required that the affirmative defense of release or discharge is established, as a matter of law.)
35. That such extensions and agreements appreciably enhanced the LeTendres’ and Afflecks’ jeopardy on their guaranty contracts, assuming that *165 said contracts had not been terminated, for had they known, the LeTendres and Afflecks could have acted in such a way that they would be liable for nothing (paying debt and suing RRCI while still solvent). (Denied. Calls for a finding of fact not required upon the evidence.)
36. That by not being informed of RRCI’s declining financial situation by CCB&T, the LeTendres and Afflecks have been released from their contracts of guarantee. (Denied. A finding that the defense of release has been established as a matter of law is not required.)
37. That by granting the extensions in payment without informing the LeTendres and Afflecks and obtaining their consent, CCB&T substantially increased the LeTendres’ and Afflecks’ risk and thereby released the LeTendres and Afflecks from their contract of guaranty, assuming it was still in force. (Denied. Calls for a finding of fact not required upon the evidence.)
38. That all of the foregoing reasons together constitute more than adequate grounds for concluding that the LeTendres and Afflecks have been released from their contract of personal guarantee under the law of guarantee in this Commonwealth. (Denied. This request is based upon assumed facts which the court was not required to find upon the evidence.)
39. That as a matter of law, the plaintiff s Complaint must be dismissed. (Denied. No specification given as required by the Rule of Court.)
40. That as a matter of law, the plaintiff be ordered to repay to the defendants all sums collected by the plaintiff from the defendants on said contract of guarantee. (Denied. (1) Lack of specification of the grounds, and (2) no such affirmative relief sought in the answerand, therefore, this request is immaterial.)
4!. That in the event any liability is found against any of the defendants in the contract of guarantee, the plaintiff must give the defendants credits for all payments made to date plus the amount of the debt paid to plaintiff through plaintiffs acceptance of the Chapter 11 plan of arrangement filed by the Corporation. (Allowed)
42. That as a matter of law, the extensions of payment beyond what was understood when the note was signed have released the LeTendres from their contract of personal guarantee, assuming it had not already been terminated. (Denied. A finding of release by reason of extension given principal debtor is not required. Defendants have burden of proof on the issue. Roger Williams Grocery Co. v. Sykes, 357 Mass. 485, 488 [1970].)
43. That the aforementioned extensions and agreements between RRCI and CCB&T appreciably enhanced the LeTendres’ jeopardy on their guarantee •contracts, assuming that said contracts had not been terminated, for had they known, the.LeTendres could have acted in such a way that they would be liable for nothing (paying debt and suing RRCI while still solvent). (Denied. Calls fora finding of fact not required upon the evidence.)
44. That by not being informed of RRCI’s declining financial situation by CCB&T, the LeTendres have been released from their contracts of guarantee. (Denied. Calls for a finding of fact. See Juergens v. Venture Capital Corp., 1 Mass. App. Ct. 274, 278 [1973].)
45. That by granting the extensions in payment without informing the LeTendres and obtaining their consent, CCB&T substantially increased the LeTendres’ risk and thereby released the LeTendres from their contract of guarantee, assuming it was still in force. (Denied. Calls for a finding of fact not required upon all the evidence.)
46. That all of the foregoing reasons together constitute more than adequate grounds for concluding that the LeTendres have been released from their con *166 tract of personal guarantee under the law of guarantee in this Commonwealth. (Denied. This request assumes the existence of facts not found by the court.)
47. That as a matter of law the plaintiffs complaint must be dismissed as against the defendant LeTendres. (Denied. This request lacks proper specification.)
48. That as a matter of law a holder of a contract of guarantee may by its actions discharge one or more of the guarantors while continuing to hold the contract validly as against other guarantors. (Allowed)
The defendants Constance LeTendre and Yvon J. LeTendre claim to be aggrieved by the following:
1. The judgment and order amending the finding and judgment. No additional evidence was taken at the time of hearing of said motion.
2. The method of computing the damages employed by the Court.
3. The Court’s action on defendant’s request for rulings numbered 3, 12, 13, 18, 19, 20, 21, 23, 26, 28, 34, 35, 36, 37, 38, 42, 43, 45, 46, and 47.
4. The Court’s Findings of Fact numbered 1,2,3,4,5, and 6, for these findings were, as a matter of law, not supported by the evidence.
Our review of this case discloses that the issue of additional evidence not being taken at the hearing on the Motion To Amend Findings And Judgment has not been addressed in either the appellant’s brief or in oral argument. Therefore, this issue will be deemed as having been waived by the appellant. (See Kiefer v. Boetti, 43 Mass. App. Dec. 55 [1969]; Machnik, Adm. v. Paluilis, 44 Mass. App. Dec. 146 [1970]; The Holliston Mills, Inc. v. Plimpton Corp., 55 Mass. App. Dec. 43 [1974]; Sechrest v. Safiol, 1980 Mass. App. Dec. 133; Rule 64(g), Dist./Mun. Ct. R. Civ. P.).
Following the filing of the Supplemental Complaint, the defendants neither attempted to amend their answer to raise any issue concerning the propriety of the plaintiffs application of the $16,163.59 received from the defendant, Paul E. Affleck, to principal, interest and attorney’s fees, nor did they raise the issue at trial. The defendants did include in their request for rulings a request that if they were found liable on the contract of guarantee that they be given credit “for all payments made to date plus the amount of the debt paid to the plaintiff through plaintiff s acceptance of the Chapter 11 plan of arrangement filed by the Corporation” (underlining supplied) (see Request for Rulings No. 41). This request was “Allowed” by the trial judge. Having not previously presented the issue of application of$16,163.59 to the trial judge, the defendant may not now raise it for first time on appeal (See Machnik v. Paluilis, supra; Kelsey V. Hampton Court Hotel Company, 327 Mass. 150 [1951]).
Concerning the trial judge's calculations of the amount of the judgment, from the exhibit contained in the appellate record (Exhibit M), we note that he commenced his calculations beginning February 1, 1978 using $12,542.36 as the principal amount of the note. Applying the interest rate found by the trial judge to be applicable at that time, namely 9.5% (the note provided for an interest rate of \% over the prime lending rate of the Cape Cod Bank and Trust Company), he determined that the per diem rate was $3.26. There were 241 days between February 1, 1978 and October 1, 1978 when two payments were received by the bank, one from Residential Rehabilitation Centers, Inc., in the amount of $1,029.77, and the other from the Residential Rehabilitation Centers, Inc., bankruptcy payments in the amount of$3,612.47. He found that the interest for the 241 days at $3.26 per day amounted to $785.66. Therefore, the principal plus accrued interest on the $12,542.36 was $13,328.02 as of October 1,1978. The two payments made on that date totalled $4,642.24, leaving a net balance at that time *167 of $8,585.78. Using ihe same interest rate of 9.5% as applied to the new balance, the trial judge then determined that the per diem rate was $2.23. There were 268 days from October 2, 1978 to the date of the amended judgment, giving the amount of $597.64 in interest. He further determined that the interest from the date of the commencement of the action, October 20,1977, through December 7, 1977 amounted to $360.00, that the interest for the period December 8, 1977 through February 1, 1978 was $179.30 and that “interest carried forward" was $205.75 (it is not clear what interest factor was used in making these determinations). He noted that although the entire sum of $4,642.24 had been credited on October 1, 1977, in fact, there were two installment payments made on different dates and that if the actual dates of payment were used, a slightly different interest calculation would result. A notation-then follows that the total amount of the principal calculated to be due was $8,585.78 and that the total interest due was $2,128.35 as of June 27, 1979. A further notation appears that the amended judgment was $8,604.98 in principal and $2,070.47 in interest plus an additional interest accrual for the period March 21, 1979 through the date of the amended judgment of $193.61. There are no notations explaining how the difference between $8,585.78 and $8,604.98 was arrived at or how the difference between the $2,128.35 and the $2,070.47 in interest was calculated. We must also agree with the appellants’ contention that it appears the $785.66 in interest for the period February 2, 1978 to October 1, 1978 was included in thé trial judge’s calculations twice, once when it was added to the $12,542.36 outstanding principal due on the note as of February 1, 1978 to give the amount of $13,328.02 prior to the $4,642.24 credit for the two payments recorded on October 1, 1978, and a second time when determining the total interest due.
We have carefully reviewed the entire appellate record and find no other memorandum of how the trial judge reached his final amounts. We would emphasize that we do not find that the trial judge reached his final amounts. We would emphasize that we do not find that the trial judge erred in his calculations, but on the appellate record as submitted, we are unable to verify their accuracy. Also, on the appellate record we are unable to ascertain the various rates of interest applied by the trial judge in making some of his interest calculations, and consequently are unable to make our own determination of the proper amounts involved.
As for attorney’s fees, the trial court awarded attorney’s fees in the amount of $3,000.00. The appellant challenges this determination because the trial judge took no evidence or affidavit with respect thereto. We find the appellants’ allegations to be without merit. The trial judge has ample opportunity while presiding over an action to acquire firsthand knowledge of the factors necessary to the determination of reasonable attorney's fees, that is, (1) how long the trial lasted, (2) the difficulty of the legal and factual issues involved, and (3) the degree of competence demonstrated by the attorney. Thus, he can discern from his own experience as a judge and expertise as a lawyer, the amount that the attorney should be paid Heller v. Silverbranch Construction Corp., 376 Mass. 621 [1978]). Plaintiffs counsel stated in open court that he had spent 125 hours in the preparation of the case. The note which gives rise to that action specifically provided for reasonable attorney ’ s fees incurred in connection with its collection and we perceive of no basis upon which we could conclude that the trial judge's determination that $3,000.00 represented a reasonable attorney’s fee was erroneous in any way.
Finally, based upon our analysis of the forty-eight requests for rulings filed by the defendants-appellants, which number the trial judge could have regarded as *168 excessive (see LeDonne v. Slade, 38 Mass. App. Dec. 83 [1967]; Goslow v. Pittsburgh Plate Glass Co., 39 Mass. App. Dec. 1 [1967]1 Commercial Credit Corp. v. Stan Cross Buick, Inc., 343 Mass. 622 [1962]; Stella v. Curtis, 348 Mass. 458 [1965]), we find that requests numbered 3, 12, 13, 28, 35, 37, 38, 43, 44, 45, and 46 call for findings c-f fact, findings of fact not required by the evidence, or assumed facts, and that they were all properly denied by the trial judge (see Saba v. Khouri, 42 Mass. App. Dec., 60 [1969]; Armata v. McDonald, 56 Mass. App. Dec. 34 [1975], Requests numbered 18, 19, 20, 21, 23, 26, 34 and 42 were properly acted upon by the trial judge and his actions thereon are consistent with his findings of fact and supported by the evidence and the reasonable inferences that could be drawn therefrom (see Ferrara v. Goldberg, 49 Mass. App. Dec. 64 [1972]; Hilliard v. You-Do-It Electronics Hobby Center, Inc., 43 Mass. App. Dec. 145 [1969]; Plescia v. Cavanaugh, 42 Mass. App. Dec. 204 [1969]). Request number 47 was also properly denied for the reason specified by the trial judge, namely that it lacks proper specification. The trial judge was not required to act upon the six requests for findings of fact submitted by the defendant (see Castano v. Leone. 278 Mass. 429 [1932]).
Accordingly, we find no error by the trial judge in these proceedings and the report is dismissed except with respect to the calculations of principal from and after February 1,1978, and interest from the date of commencement of the action to the date of entry of the amended judgment. Since we are unable to verify his calculations from the appellate record, the case is returned to the trial court for recalculation thereof consistent with our findings herein. The trial judge is hereby authorized to hold an evidentiary hearing to the extent he deems necessary to establish the proper amount of the judgment.